|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: May 27, 2021<br>10:00 a.m. |
| In re:<br><br>OWENS FUNERAL HOME,<br>INCORPORATED,<br><br>           Debtor. | Chapter 11<br><br>Case No. 20-10508 (DSJ)<br><br>(Jointly Administered) |

**VERIFIED OBJECTION OF 216 LENOX AVE. FUNDING INC.
TO DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS
TO OBTAIN POST-PETITION SECURED, SUPERPRIORITY
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364**

**TO:** **THE HONORABLE DAVID S. JONES**
      **UNITED STATES BANKRUPTCY JUDGE**

216 Lenox Avenue Funding, Inc. ("216 Lenox") hereby submits this opposition to the Debtors' Motion for Entry of a Final Order (i) Authorizing the Debtors to Obtain Post-Petition Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and (ii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c) (the "Financing Motion").

**PRELIMINARY STATEMENT**

1. 216 Lenox has been cooperative for over one year, patient and hopeful that these Debtors would succeed in their efforts to obtain financing to replace 216 Lenox. Mindful of the stresses of Covid-19 and indulgent of the Debtors' assurances that they were actively pursuing reasonable financing capable of Court approval, 216 Lenox has given the Debtors the time and latitude to present the Court with a commitment or a plan.

2. Just prior to the April 6 hearing before this Court on 216 Lenox's relief stay motion, the Debtors revealed the terms of the $1.75 million "Debtor in Possession Term Loan Facility" (the "Commitment") procured from Legalist DIP Fund I, LP ("Legalist DIP Fund"). The Debtors offered this Commitment to the Court and to 216 Lenox as the basis upon which the Debtors intend to construct a reorganization plan. After carefully reviewing the Commitment, 216 Lenox's objections thereto are only magnified.

3. Instead of rejecting the Commitment out of hand, which the Court could have done, the Court denied 216 Lenox's relief stay motion, and provided the Debtors an opportunity to present the Court with a motion to approve the Commitment as well as a plan based upon the Commitment. On April 12, 2021 the Court entered the Order on Motion of 216 Lenox Avenue Funding, Inc. for Relief from the Automatic Stay and Modifying Stipulation and agreed Order for Adequate Protection So Ordered by the Court on November 17, 2020 (the "Second Adequate Protection Order") reflecting this ruling.

4. The Financing Motion presents the Commitment, but does not offer the Court a plan that integrates this proposal into the structure of the Debtors' overall reorganization. 216 Lenox believes that the Court, when it ordered that the Debtors file a plan and the instant motion

1

by June 7, 2021, intended that the Court be permitted to evaluate the Commitment in terms of its impact on a plan that addressed all creditors and parties-in-interest. By asking the Court to consider the Financing Commitment in the absence of a plan, the Debtors fail to provide the whole picture and circumvent the equitable considerations inherent in plan consideration under Sections 1129(a) and (b). This would impose upon this estate the burdens of this onerous financing without affording creditors and the Court the ability to weigh the equitable protections inherent in plan confirmation under Section 1129.

5. On its own, the Financing Motion should be disapproved. The terms of the Commitment are so manifestly atrocious, and the Debtors' articulation of its intentions with respect to a plan that would stem from closing on this Commitment so vague, that the Court should reject the Commitment as any evidence that the Debtor is on a path to a plan that has a reasonable prospect of confirmation. Quite the opposite, the presentation of the Commitment indicates that these Debtors are willing to sign anything to avoid stay relief.

6. The Debtors contend that they can rehabilitate the Property so as to improve its value, thereby proving sufficient equity at the conclusion of the two (2) year renovation project to secure both the new borrowing and 216 Lenox while the same time presumably generating an equity dividend which would enable the Debtors to address their administrative and general unsecured obligations in this case and satisfy all debts in full.

7. 216 Lenox asks the Court to heed the extensive case law in this area rejecting the proposition that aspirational increases in value based upon proposed rehabilitation can justify priming financing under Section 364(d)(1).

8. 216 Lenox has supplied the Court with the Appraisal Report which established

that the "as is" value of the Property is $2.125 million. This value provides a perilously small equity cushion to 216 Lenox that could evaporate at any moment. The idea that renovations funded by the outrageously expensive terms of the Commitment can somehow generate multiple millions of appreciation without jeopardizing 216 Lenox is preposterous but more importantly unsupported by evidence.

9. The Debtors did not rebut the Appraisal Report in connection with the relief stay motion, and they do not do so now in connection with the Financing Motion even though the Debtors' bear the burden of proof in both settings. The Debtors offer no appraisal to support the present or as renovated value of the Property. The Debtors have not provided contractors' estimates as to the expense and time frame for such a project. The Debtors have provided no expert to testify that the proposed financing is on terms and at a rate that are justified by the market. The Debtors have offered no proof that any one employed thereby or Mr. Owens himself has the experience to oversee this project. The Debtors have offered no financial projections (audited, unaudited or otherwise) to establish that the Debtors can (i) afford this financing; (ii) complete the proposed project with this financing; and (iii) ultimately provide a dividend to unsecured claims by undertaking this scheme. The Court can not overlook the Debtors' derelictions of these basic burdens of proof.

10. The Debtors have only provided their attorneys' unverified and conclusory statements as to these critical findings. The Court should reject unsubstantiated attorney statements as the basis for this Financing Motion.

11. Permitting this DIP financing to supplant 216 Lenox transposes all of the risk associated with the Property rehabilitation to 216 Lenox. Nothing in the law or the equities of

this case supports this scheme. The Debtors have not yet filed a plan, though the Second Adequate Protection Order provides the Debtors until June 7, 2021 to do so. 216 Lenox believes the intention of the Court was that the Court be enabled to adjudicate the Commitment within the context of a plan in which the impact of this new borrowing on all creditors and parties-in-interest could be evaluated. And to the extent that funding under the Commitment may occur post-plan confirmation, the Court would be required to evaluate such financing under Section 1129 rather than Section 364. The Debtor should be required to pass its financing scheme through the gauntlet of plan confirmation, as the Court intended.

    A.    **Background**

12.    216 Lenox is the holder of a claim that has grown to the amount of $2,050,859.09 as of April 6, 2021 secured by a first priority mortgage against 216 Lenox Avenue, New York, New York (the "Property"). The Debtors misstate the indebtedness in paragraph 5 of the Financing Motion, failing to account for an amendment to 216 Lenox's proof of claim which updated the amount due to include post-Filing Date accruals.

13.    The Court is referred to Docket No. 64 filed on March 18, 2021, which contains the Certification of Frank Chiarello in Support of Renewed Motion of 216 Lenox Avenue Funding Inc. for Relief from the Automatic Stay Pursuant to 11 U.S.C. §362(d)(1) and (d)(3)(the "Chiarello Cert."). The Chiarello Cert. updates the amount due 216 Lenox, verifies the underlying loan documents and the exhibits relied upon herein. In addition, Mr. Chiarello has reviewed this Objection and added his verification of the factual statements set forth herein.

14.    The Debtor has now been in Chapter 11 for more than fifteen (15) months. No plan has been filed, though the Debtor is presently subject to this Court's Second Adequate

Protection Order requiring that a plan be filed by June 7, 2021.

15.    216 Lenox has filed two separate relief stay motions in this case, both of which have been denied.

16    Attached hereto as Exhibit "A" is an Appraisal Report regarding the Property prepared by Vanderbilt Associates as of July 24, 2020 (the "Appraisal Report"). The Appraisal Report concludes that the Property has an "as is" value as of July 24, 2020 of $2,125,000. 216 Lenox believes that this valuation remains valid and accurate.

17.    The Debtor estimates that the "as is" value of the Property is $3,230,000 in paragraph 4 of the Financing Motion. The Debtor provides no evidence to support this opinion.

    **B.    The $1.75 Million Commitment Terms are Unconscionable**

18.    The Commitment requires the Debtor to obligate itself to interest at prime (presently 3.25%) plus 11.75%, so an effective initial annual interest rate of 15%. This translates to $393,750 of direct interest charges during the 18 month (548 day) initial term of the suggested loan.

19.    The Debtor estimates that it requires the loan for at least 24 months, and the Commitment indicates that the Debtor can extend for the required additional 6 months at an interest premium of another 4.75% (effective rate 19.75%), which adds an interest charge for the 18th to 24th months of $172,821.50. This translates into a $21,875 monthly interest payment for the first 18 months, and a $28,802.08 interest payment for the final 6 months of the 24 month term required by the Debtor.

20.    The Commitment also calls for the additional charges of a "commitment" fee (2.75%), "underwriting" fee (1.75%) and "monitoring" fee (1.75% x 2) and a "carveout" fee

(2.5% "post-default") totaling 10.5%, which fees add to a further charge of $183,750 against the loan balance.

21.   Thus, under the Commitment the Debtor would be agreeing to interest and fees alone over the 24 month anticipated term of the loan aggregating $750,321.50, meaning that the $1.75 million loan would only generate $999,678.50 in utilizable proceeds ($1,750,000 - $750,321.50), assuming all interest expenses and fees are paid from the loan proceeds. And that is before the Debtor and its creditors are stung by the inevitable triggering of default interest (an extra 4.75%), the "break-up" fee, the "undrawn-line" fee, and the lender's reimbursable fees and expenses, such as legal fees.

22.   The Debtor argues that it will not draw all this funding at once, but the Court should observe that the Debtor does not provide a construction schedule or a schedule of when it will require advances. And any mitigation of the aggregate interest charges that might result from deferred draws will be off set by the "undrawn-line" fee of 4.75%.

  **C.**  **The Debtor Can Not Afford the New Borrowing**

23.   The Debtors can not afford the interest payments calculated above from the Debtors' cash flow. The Debtors have not generated projections for the Court to analyze, but it is evident from a cursory analysis of the Debtors' monthly operating reports that the Debtors do not have sufficient cash flow to afford a monthly payment of $21,875, let alone of $28,802.08, on top of paying adequate protection to 216 Lenox at $15,776.09 per month. Attached hereto as Exhibit "B" is the Statement of Operations extracted from the Debtors' most recently filed monthly operating report (January 2021 Operating Report, pp. 25-26), which indicates that the Debtors have shown modest operating profits before reorganization expenses, but losses after accounting

for those reorganization expenses, some of which are accrued.

24.     Attached to the Financing Motion, the Debtors produce a budget for the projected expense of this project, estimating a total cost of between $1,337,820.00 and $1,480,936.60 for completion of the rehabilitation. The Debtors do not acknowledge it, but the borrowed funds are insufficient to cover projected debt service and costs on top of these budgeted renovation expenses. Based upon the calculation of the net to the Debtors of $999,678.50 (see ¶ 21 above), the Debtors will be short somewhere between $338,000 and $481,000. The Debtors offer no explanation as to how this shortfall will be addressed.

25.     The Debtors can not make up this shortfall from operations. The Debtors' Statement of Operations set forth in Exhibit "B" indicates that the Debtors re operating at a loss when accounting for recurring reorganization expenses. The Debtors' own numbers therefore establish that the Debtors will be in more significant and intractable debt at the conclusion of this rehabilitation project, with no demonstrable ability to satisfy this additional debt.

    **D.**     **The Debtors Can Not Establish the Ability to Refinance after Rehabilitation**

26.     The Debtors should be compelled to offer proof that the Debtors will be able to obtain financing sufficient to repay the aggregate indebtedness to 216 Lenox and Legalist DIP Fund at the conclusion of this anticipated rehabilitation project. That obligation is roughly 216 Lenox ($2,050,859.09) plus Legalist DIP Fund ($1,750,000) = $3,800,859.09. This amount omits the expense of obtaining and paying the fees associated with such new borrowing, as well as the additional administrative obligations of the estate, which continue to mount. If the Legalist DIP Fund Commitment is any indicator, the cost of new financing two years from now may also be prohibitive.

  **E. The Debtor Has Not Demonstrated That it Has
Exhausted Efforts to Obtain Alternative Funding**

  27. The Debtors suggests that the Property has an "as is" value of $3.23 million (Financing Motion, ¶ 4), even though 216 Lenox's Appraisal Report says $2.125 million and the Debtors have failed to generate an appraisal of their own. At the same time, the Debtors assert that they has exhausted efforts to obtain alternative financing, such that a priming lien under 11 U.S.C. §364(d)(1) is its only recourse. If the Debtor is correct, and the Property is worth $3.23 million, then present ratio of a new loan that pays off 216 Lenox to the value of the Property would approximately 69%. The Debtors should be able to obtain financing right now if that ratio is accurate. The Debtor does not address this, relying upon their attorneys' statements that the Debtors have exhausted all avenues. Of course, the likely answer is that access to refinancing now is limited by the actual present value, which is in line with 216 Lenox's appraisal.

  **F. The Debtor Can Not Prime 216 Lenox**

  28. 216 Lenox does not consent to the Debtor borrowing funds secured by a lien on the Property that is superior to 216 Lenox's mortgage. There is no precedent in law or in equity that would permit the subordination of 216 Lenox. The Debtor does not cite any case or statute that would countenance such a result under the facts of this case.

  29. The Debtors' suggestion that they will rehabilitate the upstairs residential apartments and then refinance the aggregate secured debt to pay the resultant obligation, as well as all of the associated debtors' obligations, including the administrative expenses of this estate, is unsubstantiated wishful thinking. The Debtors' counsel's contention that the Property will be worth $6.0 to $8.0 million if renovated (Financing Motion, ¶ 4) is not corroborated by any

8

evidence.

30. The Debtors' own "broker's price opinion," submitted previously in opposition to 216 Lenox's relief stay motion, looked at comparable sales of mostly renovated properties and concluded that the Property might have a value of $3.34 million if renovated. This value, even if achieved by a renovation, would not ultimately secure the combination of Legalist DIP Fund and 216 Lenox. There is simply no way that the Property, even if renovated, has sufficient equity or cash flow under any analysis to sustain this much debt.

### G. Speculative Increases in the Value of Property Based Upon Rehabilitation Work Does Not Meet the Section 364(d)(1) Requirement of Adequate Protection to 216 Lenox

31. The Financing Motion seeks the Court's approval of the Commitment under 11 U.S.C. § 364(d)(1), under which the Court may only authorize a debtor to obtain credit that primes a prepetition security interest if (a) the debtor is unable to obtain such credit on an unsecured basis on more favorable terms, and (b) the primed lienholder is adequately protected. 11 U.S.C. § 364(d)(1).

32. Under 11 U.S.C. § 361(2), adequate protection may take the form of "additional or replacement lien[s] to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2)

33. Neither Isaiah Owens, LLC nor any of the Associated Debtors has a significant asset other than the Property, hence there is no apparent way to offer a replacement lien to 216 Lenox.

34. Granting post-petition financing on a priming basis is extraordinary and is allowed only as a last resort. In re YL West 87th Holdings I, LLC, 423 B.R. 421, 441(Bankr. S.D.N.Y.

9

2010); citing In re Seth, 281 B.R. 150, 153 (Bankr.D.Conn.2002) ("The ability to prime is extraordinary"); see also In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3rd Cir.1994); In re Beker Indus., 58 B.R. 725, 736 (Bankr.S.D.N.Y.1986).

35. YL is on point in rejecting the proposition that speculative increases in value based upon rehabilitation can constitute adequate protection under Section 364(d)(1). YL addressed a debtor that sought to borrow additional funds based upon an expectation that the completion of renovations using funds borrowed with a priming lien would generate the added value that would supply "adequate protection" under this section. The YL Court rejected this approach as follows:

> Similar to the development projects in [Swedeland], the successful rehabilitation of the Subject Property is highly speculative. Even assuming the most optimistic valuation, which this Court has found not to be the appropriate valuation for the Subject Property, the equity cushion at the Debtor level is tenuous at best due to the contingencies discussed herein. Further, this Court would not, based upon the record to date, allow priming of senior liens pursuant to section 364(d)(1) under such circumstances.

In re YL West 87th Holdings I, LLC, 423 B.R. at 441.

36. The Court is likewise directed to In re Strug-Division LLC, 380 B.R. 505, 515 (Bankr. N.D. Ill. 2008) for a similar rejection of a speculated increase in property value resulting from rehab work providing adequate protection. The Strug-Division Court held -

> [A]s shown above, such increase in value will not bring total value to much more than the debt plus proposed loan. The "equity cushion" would be small, and therefore the risk of being primed would be entirely on Natixis. Debtors cannot thereby provide the "indubitable equivalent" of the Natixis present interests, and therefore cannot provide adequate protection. Consequently, Debtors cannot qualify to obtain a loan with a priming lien under § 364(d)(1). Since no other type of funding has been offered, Debtors

10

>   lack the resources to rehab the property, and its proposed Plan is
>   thereby shown to be unfundable and unconfirmable.

In re Strug-Division LLC, 380 B.R. at 515.

37. These cases reject the very premise of the Debtors' reliance upon the Legalist DIP Fund loan, which is that the rehabilitation of the Property will generate the additional value that will adequately protect 216 Lenox. Aside from the egregious terms of the loan, as well as the lack of evidence, this Court may reject the premise of the Debtors' effort under the law alone, which rejects projected value enhancement as adequate protection.

### H. The Debtor Has Offered No Competent Evidence as to the Property Value

38. The Court has no competent evidence as to the value of the Property other than the Appraisal Report obtained by 216 Lenox. This Appraisal Report reveals little or no equity cushion at the moment. Based upon the proffer of the Appraisal Report by 216 Lenox, the Bankruptcy Code specifically shifts the burden to the Debtor to establish that an equity cushion (or some replacement collateral) provides adequate protection to 216 Lenox in the context of 216 Lenox's relief stay motion, 11 U.S.C. § 362(g)(2), as well as in connection with any effort to seek approval of a priming lien, 11 U.S.C. § 364(d)(2).

39. The Debtors' unsubstantiated attorneys' opinions do not meet this burden of proof. Attorney argument is not evidence. R.R. Love, Ltd. v. TVT Music, Inc., 282 Fed. Appx. 91, 94 (2d Cir. 2008) (attorney's arguments not evidence) (internal cite omitted); Boyle v. County of Suffolk, 2010 U.S. Dist. LEXIS 114487, at *12 (E.D.N.Y. Oct. 19, 2010) (finding County failed to meet its evidentiary burden because it only advanced attorney argument, which is not evidence)(citing Deboissiere v. American Modification Agency, 2010 U.S. Dist. LEXIS

11

44385, at *5, WL 1849265, at *2 (E.D.N.Y. 2010)(counsel's arguments not evidence).

40. 216 Lenox has nonetheless analyzed the comparable sales identified in the Broker's Price Opinion, previously filed by the Debtors in opposition to 216 Lenox's relief stay motion, as well as the statements made in the Financing Motion.

41. First, 216 Lenox wants to point the Court to an apparent discrepancy in the square footage of the Property. The Appraisal Report (see p. 2) identifies the Property as having a square footage of 4,180 square feet. The Debtors' "brokers price opinion" states that the Property has a square footage of 6,800 square feet. There is no explanation for the broker's divergence from the property records relied upon by 216 Lenox's appraiser. 216 Lenox assumes that this is simply an error by the broker. But it is a significant error, as it inflates the conclusions reached by the broker.

42. The first comparable relied upon by the broker was 239 Lenox Avenue, which the broker offers as a 4,000 sq. foot property sold unrenovated for $701 per square foot. The square footage is, again, simply not accurate, as a search of Department of Buildings records reveals that this property was in fact 5,447 square feet and was thus sold for $514 per square foot. Applying a $514 per square foot price to the unrenovated (but occupied) Property (4,180 sq. ft. x $514 = $2,148,520), generates an "as is" number that is very consistent with the conclusion of $2,125,000 in the Appraisal Report.

43. Two of the broker's other comparables, 189 Lenox Avenue and 1694 Park Avenue, were properties that were renovated prior to sale. 79 E 125th Street is not a comparable as it is 20 apartments and 2 stores, one of which is a national chain Wendy's, making the retail component of the building far more valuable than 216 Lenox Avenue. Further, it is located on

12

125th Street, a block away from the subway, in the most trafficked corridor in the area.

44. The broker's opinion failed to use the most recently sold comp on Lenox Avenue, 228 Lenox Avenue, which sold on March 16, 2020 for $2,500,000 or $419 per square foot. 228 Lenox very close to and is the most similar to the Property out of all the comps identified by the broker or the appraiser, and it reveals that the value conclusion in the Appraisal Report may, in fact, be too high.

45. This analysis is offered only to focus the Court on the patent inadequacy of what the Debtors have previously offered. The burden of proof is upon the Debtors by statute to rebut the Appraisal Report. An in depth analysis of the broker's opinion previously supplied reveals that it is riddled with errors but that the discernible comparable sales support the Appraisal Report. Most importantly, nothing in the Appraisal Report or the broker's opinion supports counsel's statement that the Property will have a value of $6.0 to $8.0 million after renovation.

I. **Exit Financing Should be Set Forth in a Plan So as to Be Considered Under Under §§ 1123(a)(5)(E) and 1129(b)(2)(A) Rather than §364(d)(1)**

46. The Debtors seek approval of the Financing Motion without revealing to the Court or 216 Lenox how such financing integrates with a plan the Debtors might propound. This financing is, in essence, exit financing, and should be considered as part of a plan under §§ 1123(a)(5)(E) (permitting lien modification, including subordination) and 1129(b)(2)(A) (permitting cram down over dissent), not § 364(d)(1).

47. This oversight is not unintentional, as 216 Lenox has consistently questioned the Debtors as to how a plan might be structured so as to be confirmable in the single asset real estate case of Isaiah Owens, LLC. By seeking approval of this financing first, under § 364(d)(1), the

Debtors seek to bypass the equitable considerations set forth §§ 1123(a)(5)(E) and 1129(b)(2)(A).

48. The Court is on solid ground in requiring that the Debtors present this financing in a plan. To the extent that the financing sought by the Debtors will be advanced, in part, post-confirmation of an anticipated plan, such financing may not be considered under 11 U.S.C. §364(d)(1), but must be considered under §§ 1123(a)(5)(E) and 1129(b)(2)(A). In re Aspen Club & Spa, LLC, 2020 WL 4251761 at *10 (10th Cir.)("even when the Bankruptcy Court would grant the debtor-in-possession's financing motion, the liens are recorded while the collateral is property of the estate, the Plan is confirmed, and then the exit loan is funded ... we nevertheless conclude ... that a debtor may not rely on § 364 to obtain exit financing that primes existing secured creditors.")

### J. 216 Lenox Would Be Impaired by the Debtors' Suggested Treatment

49. The Debtors have failed to acknowledge the limitations on their ability to present and confirm a plan in the Isaiah Owens, LLC case based upon the fact that it is a single asset real estate case in which the debtor has no debt other than 216 Lenox. Under 11 U.S.C. §1129(a)(10), any plan proposed by the Debtor that lacks 216 Lenox's consent would necessarily have to be confirmed under the cram down provisions of Section 1129(b), under which at least one impaired class, excluding the votes of insiders, must accept the plan. There is no such class.

50. Section 1129(a)(10) "ensures that prior to embarking upon the tortuous path of cramdown and compelling the target of cramdown to shoulder the risks of error necessarily associated with a forced confirmation, there is a showing that some group hurt by the plan favors the plan." In re Fur Creations by Varriale, Ltd., 188 B.R. 754, 760 (Bankr.S.D.N.Y.1995). 11

U.S.C. § 1129(a)(10) requires the affirmative acceptance of the plan by at least one impaired class of claims. See In re RYYZ, LLC, 490 B.R. 29, 39–40 (Bankr.E.D.N.Y.2013) (explaining that in single asset real estate cases § 1129(a)(10) is a powerful creditor tool).

51.  The Associated Debtors deflect this argument by contending that their plan(s) will ultimately have no impaired class or classes, as the Debtors seek to pay all creditors in full. But this is a preposterous contention, as the Debtors' suggestion priming of 216 Lenox is manifestly a material impairment of 216 Lenox under § 1123(a)(5)(E). § 1124 states that a claim is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest...." 11 U.S.C. § 1124. Deferred payments over time to a judgment holder constitutes impairment. In re G.L. Bryan Investments, Inc., 340 B.R. 386 (Bankr. D. Col. 2006). Subordination of a lien is impairment. In re Scrubs Car Wash, Inc., 527 B.R. 453, 458 (Bankr. D. Col. 2015).

**K.      Confirmation Will Require Cram Down**

52.  The Financing Motion looks at Isaiah Owens, LLC as consolidated with the Associated Debtors, as if the debts of those entities were the obligations of Isaiah Owens, LLC. These cases are consolidated on an administrative basis only. They are not substantively consolidated.

53.  Isaiah Owens, LLC is a limited liability company validly formed and existing under the laws of New York State. It alone owns the Property, not the Associated Debtors. Isaiah Owens, LLC must demonstrate that it alone can present and confirm a plan, separate and apart from any plan that might be presented on behalf of and for the benefit of the Associated Debtors. Even if all other classes of creditors in of each of the Associated Debtors' plans are actually

15

unimpaired or would vote in favor of confirmation, this treatment of 216 Lenox would still require cram down of 216 Lenox in the Isaiah Owens, LLC case.

54. If thinking to do so, the Debtor may not rely upon merger or substantive consolidation with the Associated Debtors to manipulate the classes in its plan. In re Storage Masters JYP, LLC, 2012 WL 13220148 (Bankr. M.D. Fla.) (rejecting a single asset debtor's effort to utilize substantive consolidation to manipulate the cram down requirements of § 1129(a)(10) and § 1129(b), namely, to create an impaired accepting class in favor of confirmation).

55. Isaiah Owens, LLC's path to a plan requires confirmation by cram down over 216 Lenox. While confirming such a plan has many impediments, the inescapable gorilla in room is the lack of an impaired class the will vote in favor of confirmation.

16

**CONCLUSION**

For all of the foregoing reasons, 216 Lenox respectfully requests that this Court enter an Order (i) denying the Financing Motion; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Newton, New Jersey
       May 20, 2021                      McNALLY & ASSOCIATES, LLC

                                    By: /s/ Stephen McNally
                                           Stephen McNally, Esq.
                                           93 Main Street
                                           Newton, New Jersey 07860
                                           (973) 300-4260
                                           steve@mcnallylawllc.com

**VERIFICATION OF FRANK CHIARELLO**

Frank Chiarello hereby certifies as follows:

1. I am President of 216 Lenox Ave. Funding Inc. ("216 Lenox"), and have full knowledge of the facts and circumstances of this matter and submit this certification in support of 216 Lenox's Opposition to the Debtors' Motion for Entry of a Final Order (i) Authorizing the Debtors to Obtain Post-Petition Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and (ii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c).

2. I have reviewed the Opposition, and hereby verify that the factual statements set forth therein are true and accurate.

I certify that the foregoing statements are true and correct to the best of my knowledge. I understand that if the foregoing is wilfully false, I am subject to punishment.

Dated: May 20, 2021

                                   /s/ Frank Chiarello
                                   Frank Chiarello