Hearing Date and Time: October 6, 2022 at 10:00 a.m. (Eastern Time)
Objections Due: September 29, 2022 at 5:00 p.m. (Eastern Time)

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel:    (212) 237-1000
Fax:    (212) 262-1215
Charles E. Simpson (csimpson@windelsmarx.com)
David Lopez (dlopez@windelsmarx.com)

*Attorneys for Joint Debtors and Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 Case |
| OWENS FUNERAL HOME, | : | |
| INCORPORATED, et al., | : | No. 20-10508 (DSJ) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF REMOTE HEARING TO CONSIDER APPLICATION PURSUANT TO 11 U.S.C. §§ 1107 and 1108 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE RULES 2002 and 6004 OF OWENS FUNERAL HOME INCORPORATED, ET AL., FOR AN ORDER AUTHORIZING THE ENTRY INTO A LEASE

**PLEASE TAKE NOTICE** that, on **October 6, at 10:00 a.m., prevailing Eastern time**, or as soon after as counsel may be heard, a hearing will be held (the "Hearing") before Honorable David S. Jones, United States Bankruptcy Judge, to consider the application pursuant to 11 U.S.C. §§ 1107 and 1108 and Federal Rule of Bankruptcy Procedure Rules 2002 and 6004 Owens Funeral Home Incorporated (the "Debtor") and its affiliated debtors (collectively, the "Debtors")[1], for an order authorizing the Debtors to enter into a Lease for the premises located at

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Isaiah Owens, LLC (4987), Owens Transportation Excellence, Inc. (7830), and Isaiah Owens, Individually (8478). The service address for each of the above Debtors is 216 Lenox Avenue, New York, New York 10027.

{12094139:1}

216 Lenox Avenue, NY, NY 10027, and for such other and further relief as the Court deems proper (the "Application"), filed in the above-referenced Chapter 11 case.

**PLEASE TAKE FURTHER NOTICE** that the Court is not holding in-person hearings at this time; **the Hearing will be conducted using Zoom for Government**. Parties and counsel wishing to participate in the Hearing using Zoom for Government, whether making a "live" or "listen only" appearance before the Court, must make an eCourtAppearance through the Bankruptcy Court's website at www.nysb.uscourts.gov ("*Website*"). Appearances through eCourtAppearance must be made **by no later than by 4:00 p.m. on the business day before the Hearing** (the "*Appearance Reservation Deadline*"). After the Appearance Reservation Deadline, parties and counsel making a timely eCourtAppearance will receive via email from the Court an invitation to participate in the Hearing through Outlook. Outlook invitation requests will **not** be made by emailing the Court. For more information, parties and counsel are referred to the two tabs on Bankruptcy Judge Jones' Chambers page on the Court's Website labeled: "Zoom Hearings" and "eCourtAppearances." Click on the eCourtAppearances tab to make your appearance for the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and exhibits may be obtained by accessing the Court's Website (www.nysb.uscourts.gov), or by request to the undersigned attorneys for the Debtors. A Pacer password is required to view documents on the Court's Website.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Application, must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be electronically filed in accordance with the General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System can be found at the Court's Website), and shall be filed with the Court (with two courtesy copies delivered to the Chambers of Judge David S. Jones) and **served so as actually received not later than September 29, 2022 at 5:00 p.m., prevailing Eastern Time**, on: (i) Windels Marx Lane & Mittendorf LLP, 156 West 56th Street, New York, New York, 10019, Attn: Charles E. Simpson, Esq.; and (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn. Shannon Scott, Esq. Unless responding papers are timely filed and received, the relief sought in the Application may be deemed uncontroverted and an Order granting the relief may be signed.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by Windels Marx without further notice.  Parties who timely file responses or objections are required to attend the Hearing and failure to attend in person or by counsel may result in relief being granted or denied upon default.  The Hearing may be adjourned from time to time without any further notice except for an announcement at the Hearing.

Dated: New York, New York
      September 16, 2022

**WINDELS MARX LANE & MITTENDORF, LLP**
*Attorneys for the Debtors and Debtors-In-Possession*


By:   */s/ Charles E. Simpson*
      Charles E. Simpson (csimpson@windelsmarx.com)
      156 West 56th Street
      New York, New York 10019
      Tel. (212) 237-1000 / Fax. (212) 262-1215

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, NY 10019
(212) 237-1000
Charles E. Simpson

Attorneys for Owens Funeral Home
  Incorporated, et al., Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                           :

In re:                      ;       Chapter 11 Case
                           No. 20-10508 (DSJ)

OWENS FUNERAL HOME, INCORPORATED,  :
  et al.[1]                    :

                        :      (Jointly Administered)

                Debtors.    :
-------------------------------------------------------------------x

## APPLICATION FOR ORDER AUTHORIZING
## DEBTORS TO ENTER INTO LEASE

**TO:**   **HONORABLE DAVID S. JONES,**
       **UNITED STATES BANKRUPTCY JUDGE:**

     The Application of Owens Funeral Home, Incorporated, et al., the above-captioned

Debtors and Debtors-in-Possession (jointly referred to as the "Debtors"), by their attorneys,

Windels Marx Lane & Mittendorf, LLP, as and for their Application pursuant to Sections 1107

and 1108 of the United States Bankruptcy Code, 11U.S.C. §§ 1107 and 1108, and Rules 2002

and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an Order

authorizing the Debtor to enter into a Lease for the Basement, Ground and First Floors of the

premises located at 216 Lenox Avenue, NY, NY 10027, and Guaranty of Isaiah Owens, with 216

Lenox Avenue FS Inc. ("216 Lenox"), respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
Isaiah Owens, LLC (4987), Owens Transportation Excellence, Inc. (7830), and Isaiah Owens, Individually (8478).
The service address for each of the above Debtors is 216 Lenox Avenue, New York, New York 10027.

**JURISDICTION**

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and

1334.  Venue of these proceedings and this Application is proper in this District pursuant to 28

U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and

(O).

2.    The statutory predicates for the relief requested are 11 U.S.C. §§105 and 363(b)

and Rules 2002, 6004 and 9014.

**BACKGROUND**

3.    On February 18, 2020 (the "Petition Date"), Isaiah Owens, LLC ("LLC"), Owens

Funeral Home, Incorporated (the "Funeral Home"), and Isaiah Owens, Individually ("Owens"

and collectively with the LLC and Owens Funeral Home, the "Initial Debtors"), filed voluntary

petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court").

4.    On March 10, 2020 (the "Supplemental Petition Date"), Owens Transportation

Excellence, Inc. ("Owens Transportation" and collectively with the Initial Debtors, the

"Debtors"), an affiliate of the Initial Debtors, commenced a Chapter 11 case (together with the

Chapter 11 cases of the Initial Debtors, the "Chapter 11 Cases") by filing with the Bankruptcy

Court a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.  The Chapter 11

Cases are jointly administered for procedural purposes only.

5.    The Chapter 11 Cases were originally assigned to Honorable Stuart M. Bernstein,

United States Bankruptcy Judge ("Judge Bernstein"). On March 1, 2021, by Notice of Case

Reassignment, the Chapter 11 Cases were reassigned to Honorable David S. Jones, United States Bankruptcy Judge ("Judge Jones") for administration.

6.    The Debtors have continued in possession of their family owned funeral home business, management of their affairs as Debtors-in-Possession and management of their property located and situate at 216 Lenox Avenue, N.Y., N.Y (the "Property") except that by Order of the Bankruptcy Court, dated April 7, 2022, the Bankruptcy Court denied the Debtors "Motion for Entry of an Order Reinstating the Automatic Stay under 11 U.S.C. §362(a) and 11 U.S.C. §105(a)," which had stayed the foreclosing on the Property pursuant to a State Court Judgment of Foreclosure and sale, dated December 16, 2019, and, thus, 216 Lenox Ave. Funding, Inc. was allowed to continue its State Court foreclosure of the Property.

## THE DEBTORS' BUSINESS

7.    The Debtors have been engaged in the operation of a Funeral Home at the Property for approximately fifty (50) years; providing mortuary and full service funeral arrangements to families, including embalming, cremation and chapel services at the Property. A major part of the Funeral Home's business is providing services on a budgetary basis to low income families in the Harlem community.  The Debtors also provide transportation services to families traveling to and from funeral processions and use of the chapel at the Property for services.

## THE LEASE AGREEMENT

8.    Subsequent to the Foreclosure Sale of the Property to 216 Lenox in State Court, Owens Funeral Home and 216 Lenox entered into discussions and later, negotiations which resulted in the agreement of the proposed lease, dated September 2, 2022, a copy of which is annexed hereto as Exhibit "A", plus a Guaranty of its terms, a copy of which is annexed hereto

as Exhibit "B", between 216 Lenox, Owens Funeral Home and Isaiah Owens. The Lease covers

the basement, ground floor and first floor of the Property and was agreed to by both parties on

the following terms and conditions:

A.  Space – Basement, Ground and First floors of the Property;

B.  Term  -  Four (4) years (subject to termination by either party after 1st year on 6 months' notice)

C.  Rent* -  1st Year-$180,000.00 - $15,000.00 per month
2nd Year-$185,400.00 - $15,450.00 per month
3rd Year-$190,962.00 - $15,913.50 per month
4th Year-$196,690.96 - $16,390.91 per month

*Rentals include a proportion of base taxes, and possibly utilities

D.  Security Deposit - $30,000.00

E.  Condition of Premises – As-is

## RELIEF REQUESTED

9.      Pursuant to §363(b)(1) of the Bankruptcy Code, which provides in pertinent part:

"(1) The Trustee, after notice and a hearing, may use, sell, or lease,
other than in the ordinary course of business property of the estate."

10.     The Debtors assert that the terms of the proposed Lease provide a substantial

benefit to the Debtors' estates in that it will allow the Funeral Home to continue to operate and to

conduct its business in the community it has resided in for over Fifty (50) years and continue to

provide the funeral services to that community, which has over the years come to reply on them

for such services. It will also provide through the continued operation of the Funeral Home the

funds with which the Debtors can utilize to formulate a Plan of Reorganization. Accordingly,

the Debtors respectfully request that this Court approve this Application in all respects.

11.     While the Debtors believe that the Lease of space in the Property is in the

ordinary course of business, out of an abundance of caution the Debtors seek an Order of this

Court authorizing the Debtors to enter into the Lease with 216 Lenox Avenue FS, Inc. on the

terms substantially set forth above outside of the ordinary course of the reorganization.

## WAIVER OF MEMORANDUM OF LAW

12.     The Debtors respectfully request that this Court waive and dispense with the

requirement set forth in Rule 9013-1(b) of the Local Rules of this Court ("Local Rule 9013-1(b)"

that any motion or application filed shall have an accompanying Memorandum of Law.  The

matters raised by this Application are not complex and the Debtors do not believe that a

Memorandum of Law will assist the Court in its consideration of this Application.  Accordingly,

the Debtor submits that a waiver of the Local Rule 9013-1(b) requirement is appropriate under

these circumstances.

WHEREFORE, Owens Funeral Home Incorporated, et al., Debtors-in-Possession,

respectfully request that this Court enter an Order granting relief requested herein in full, and

granting it such other, further or different relief as this Court deems just and proper.

Dated: New York, New York
      September 16, 2022

               WINDELS MARX LANE & MITTENDORF, LLP

               By: _____
                    Charles E. Simpson (CES 2130)
                    A Member of the Firm

               156 West 56th Street
               New York, New York 10019
               (212) 237-1000
               csimpson@windelsmarx.com

               Attorneys for Owens Funeral Home
                Incorporated, et al., Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                  :

                                                        :        Chapter 11 Case

OWENS FUNERAL HOME,                                     :

INCORPORATED, et al.,                                   :        No. 20-10508 (DSJ)

                                                        :

                        Debtors.                        :        (Jointly Administered)

                                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**AFFIDAVIT OF SERVICE**</u>

STATE OF NEW YORK          )
                           :  ss:
COUNTY OF NEW YORK         )

      I, Charles E. Simpson, being duly sworn, deposes and says:

      1.     I am employed by the law firm of Windels Marx Lane & Mittendorf, LLP, attorneys for the Joint Debtors.  I am not a party to this action and am over the age of eighteen (18) years old.

      2.     On September 16, I caused to be served the ***Notice of Remote Hearing to Consider the Application Pursuant to 11 U.S.C. §§ 1107 and 1108  and Federal Rule of Bankruptcy Procedure Rules 2002 and 6004) of Owens Funeral Home Incorporated, Inc. et al., Debtors-in-Possession for an Order authorizing the Debtor to enter into a Lease for premises located at 216 Lenox Avenue, New York, NY 10027*** ("<u>Notice of Hearing</u>"), by causing true and correct copies to be enclosed securely in separate postage pre-paid envelopes and delivered by First Class Mail to those parties listed on the Service List, annexed hereto as **<u>Exhibit A</u>**.

      3.     Electronic Notice of the Notice of Hearing was provided via the Court's CM/ECF System to all parties who are entitled to receive electronic service, as indicated in the Notice of Electronic Filing. Said parties may access the filing through the Court's CM/ECF System.

      /s/     Charles E. Simpson     
              Charles E. Simpson

Sworn to before me this
16th day of September, 2022

/s/ Angela M. Williams
Angela M. Williams
Notary Public, State of New York
No. 01WI4917470, Qualified in Kings County
Commission Expires January 19th, 2026

**<u>Exhibit A</u>**

**(Service List)**

## SERVICE LIST

Charles A. Gruen, Esq.
LAW OFFICES OF CHARLES A. GRUEN
381 Broadway, Suite 300
Westwood, NJ 07675

Martin A. Mooney, Esq.
SCHILLER, KNAPP, LEFKOWITZ &
HERTZEL, LLP
950 New Loudon Road, Suite 109
Latham, New York 12110

Shannon Anne Scott, Esq.
Office of the United States Trustee
201 Varick Street, Room 1006
New York, New York 10014

Internal Revenue Service
P.O. Box 7346
Philadelphia, Pennsylvania19101

New York City Department of Finance
Taxpayer Identification Unit
25 Elm Place, 3rd Floor
Brooklyn, New York 11201

New York State Tax Commission
Bankruptcy/Special Procedures Section
P.O. Box 5300
Albany, New York 12205

Stephen B. McNally, Esq.
MCNALLY & ASSOCIATES, LLC
93 Main Street, Suite 201
Newton, New Jersey 07860

Abigail Press
97-35 133rd Avenue
Ozone Park, New York 11417

Alan Khan
61 Broadway, Suite 2820
New York, New York 10006

American Express National Bank
c/o Becket and Lee LLP
P.O. Box 3001
Malvern, Pennsylvania 19355

Batesville Casket
1 Batesville Blvd.
Batesville, Indiana 47006

Battalion PR, LLC
307 Seventh Avenue, #2403
New York, New York 10001

Broadway Exterminating
782 Amsterdam Avenue
New York, New York 10025

Brogan Cadillac
112 US-46
East Totowa, New Jersey 07512

Citiwaste
9220 Kirby Drive, Suite 500
Houston, Texas 77054

Document Solutions
151 Sumner Avenue
Kenilworth, New Jersey 07033

Elliot Urns
30 Henrietta Avenue
Bergenfield, New Jersey 07621

GT Development
459 Columbus Avenue, #194
New York, New York 10024

Home Depot
P.O. Box 9001030
Louisville, Kentucky 40290

Matthews International
Two North Shore Center
Pittsburgh, Pennsylvania 15212

Michael's Florist
4147 White Plains Road
Bronx, New York 10466

NYC DMV
159 East 125th Street
New York, New York 10035

Popular
P.O. Box 4960
Miami Lakes, Florida 33014

Suburban Vault
203 Sherman Avenue
Newmark, New Jersey 07114

The Embalmer Supply
5 Colton Road
East Lyme, Connecticut 06333

Galleros Robinson
48 Madison Avenue, 23rd Floor
New York, New York 10022

Halo Banded Solutions
2114 East 63rd Street
Brooklyn, New York 11234

Marlin Leasing
300 Fellowship Road
Mt. Laurel, New Jersey 08054

Metropolitan Discount
561 Oak Avenue
Maywood, New Jersey 07607

NYC Department of Finance
59 Maiden Lane, 19th Floor
New York, New York 10038

Pettus & Williams, PLLC
505 Fifth Avenue, 5th Floor
New York, New York 10017

State of New York Department of Labor
Unemployment Insurance Division
Governor W. Averell
Harriman State Office Building Campus
Building 12, Room 256
Albany, New York 12240

Thacker Casket
7422 Old Alexandria Ferry Road
Clinton, Maryland 20735

Owens Funeral Home, Inc.
c/o Isaiah Owens
216 Malcolm X Blvd.
New York, New York 10027

{12001481:1}

# EXHIBIT A

## LEASE

THIS LEASE dated and entered into as of the _2nd_ day of _Sept_, 2022, but having an Effective Date (defined below) and Commencement Date (as defined below) ("Lease"), by and between **216 LENOX AVENUE FS INC.**, having an office address at 875 Mamaroneck Avenue #306, Mamaroneck, New York 10543, its successors and/or assigns (collectively referred hereafter as "Landlord" or "Owner"), and **OWENS FUNERAL HOME, INC.**, having an address at 216 Lenox Avenue, New York, New York 10027 ("Tenant");

## W I T N E S S E T H :

WHEREAS, , Landlord and Tenant wish to enter into this Lease on the terms and conditions contained herein;

NOW, THEREFORE, Landlord and Tenant hereby covenant and agree as follows:

## ARTICLE 1

### Definitions

Section 1.01. The terms defined in this Section 1.01 shall, for all purposes of this Lease, have the meanings herein specified, unless the context otherwise requires.

(a)     "Additional Rent" shall mean all sums of money as shall become due from and be payable by Tenant hereunder other than "Annual Rent" (hereinafter defined).

(b)     "Alterations" shall mean additions, alterations and changes of any kind to the "Demised Premises" which affect structural portions of the Building, its roof and/or the Building's (hereinafter defined) mechanical, electrical, plumbing or other systems.

(c)     "Annual Rent" shall mean the amounts set forth in the Rent Schedule annexed hereto and which shall be payable in accordance with Article 3 hereof.

(d)     "Building" shall mean the improvements located upon the land at **216 Lenox Avenue, New York, New York 10027**, County of New York, State of New York.

(e)     "Commencement Date" shall mean the Effective Date.

(f)     "Demised Premises" shall mean **basement, cellar and first floor chapel** within the Building all as presently demised and partitioned.

1

(g)    "Effective Date" shall mean the date that the U.S. Bankruptcy Court For the Southern District of New York issues its order approving this Lease, as contemplated in Section 34.08 hereof.

(h)    "Expiration Date" shall mean the date upon which occurs the expiration of the period of **FOUR (4) LEASE YEARS** (as defined below) following the Commencement Date.

(i)    "Interest" shall mean the lesser of Eighteen (18%) Percent or the highest rate permitted by the law of the State of New York.

(j)    "Land" shall mean the land having the street address of **216 Lenox Avenue, New York, New York 10027.**

(k)    "Landlord's Address" shall mean: **875 Mamaroneck Avenue #306, Mamaroneck, New York 10543,** or such other address that Landlord may designate in writing to Tenant.

(l)    "Lease Year" shall mean for the first Lease Year the period commencing on the Commencement Date and ending with the expiration of the next succeeding twelve (12) months, plus the number of days, if any, required to have the period end on the last day of that calendar month; and each Lease Year thereafter shall be each successive twelve (12) calendar month period.

(m)    "Legal Requirements" shall mean all present or future laws, statutes and ordinances including building codes and zoning regulations and ordinances ordinary and extraordinary, foreseen or unforeseen and the orders, rules, regulations, directives, recommendations and requirements of all federal, state, county, city and borough departments, bureaus, boards, agencies, offices, commissions and other subdivisions thereof, including regulations pertaining to refuse recycling and removal, whether now or hereafter in force; together with all requirements of any insurance policy covering or applicable to the Demised Premises, the Building and/or Tenant and its use of the Demised Premises for the Permitted Use (or otherwise).

(n)    "Mortgage" and "Mortgagee" shall mean, respectively, (x) all deeds of trusts or mortgages, if any, now or hereafter made covering the Demised Premises or any part thereof and all financing and loan documents executed in connection therewith and any consolidations, modifications, or substitutions thereof, and all financing and loan documents executed in connection therewith, and (y) the holders thereof.

(o)    "Permitted Use" shall mean the operation of a **New York State licensed funeral home and chapel and administrative offices in connection therewith.**

(p)    "Rent" shall mean both the Annual Rent and all Additional Rent.

2

(q)    "Taxes" shall mean all real estate taxes, assessments, and other governmental impositions and charges of every kind and nature whatsoever, extraordinary as well as ordinary, general and special, foreseen and unforeseen, including sewer rents, commercial refuse and solid waste fees, school and general (county and/or village) taxes, as applicable, and each and every installment thereof (including any interest on amounts which may be paid in installments) which shall or may, during the Term (hereinafter defined) of this Lease, be levied, assessed, imposed, become due and payable, or liens upon, or arising in connection with, the use, occupancy or possession of or become due and payable out of, or for, the Land and/or Building or any part thereof that falls within the tax lot(s) upon which the Demised Premises is situated.  For the purposes hereof any Tax abatements, Tax savings for early payment and Tax credits given to Landlord shall be disregarded for the  definition of Taxes and Tenant's liability therefore and Taxes  specifically excludes water charges or BID impositions, which shall be Tenant's responsibility as hereafter set forth.

(r)    "Tenant's Address" shall mean: from and after the Commencement Date, the Demised Premises.

(s)    "Tenant's Plans" shall mean complete, detailed architectural, mechanical, plumbing and electrical drawings for Alterations.

(t)    "Tenant's Work" shall mean such work which may be undertaken by or for the account of Tenant at the Demised Premises which do not constitute Alterations, but which require permits from the municipality to render such work and/or the Demised Premises compliant with Legal Requirements.

(u)    "Term" shall mean the period of four (4) years commencing on June 1, 2022 ("Commencement Date") and expiring on May 31, 2026 ("Expiration Date"),  or such earlier termination date as may occur as hereinafter in this Lease provided.

Section 1.02.  The captions and the Article and Section numbers of this Lease are for convenience and reference only and in no way define, limit, or describe the scope or intent of this Lease nor in any way affect this Lease. All references to Articles and Sections contained in this Lease shall refer to Articles and Sections of this Lease unless otherwise specifically provided.

## ARTICLE 2

### Lease of Demised Premises; As-Is

Section 2.01.  (a)    Landlord, in consideration of the rents, covenants, agreements, and conditions herein set forth which Tenant hereby covenants and agrees shall be paid, kept, and performed by Tenant, does hereby lease, let, demise, and rent to Tenant, and Tenant does hereby rent and lease from Landlord the Demised Premises retroactive to the Commencement Date and for the remainder of the Term, subject to the express provisions of this Lease.  No easement for light or air is included in or appurtenant to the demise of the Demised Premises or Tenant's rights

3

pursuant to this Lease. The right to install, maintain, use, repair and replace pipes, ductwork, conduits, utility lines and wires through hung ceiling space, column space and partitions in or beneath the floor slab or in, above or below the Demised Premises for the servicing of the Demised Premises or the Building is expressly reserved onto Landlord, but Landlord shall not be obligated to make repairs or perform any service except as set forth in this Lease.

(b)    This Lease is made subject to (i) all rights, easements, licenses or privileges to the public; and except as otherwise provided herein, (ii) the condition and state of repair of the Building and/or the Demised Premises; (iii) to any violations relating to the Building and (iv) the rules and regulations imposed by Landlord on all tenants of the Land.

Section 2.02.  Tenant acknowledges that it has been in possession of the Demised Premises and is therefore thoroughly familiar with the Demised Premises and the Building and its/their current state of condition and repair and further agrees to accept possession of the Demised Premises in its then "as-is" physical condition on the Commencement Date.

Section 2.03.  Landlord shall have no obligation to make any improvements, alterations or repairs to the Building, Land and/or Demised Premises for Tenant's use and occupancy of the Demised Premises. Notwithstanding, Landlord may during the Term and at Landlord's cost and expense, install a door of its choice at the stairway of the first floor chapel portion of the Demised Premises in a location that will create a partition in order to separate the Demised Premises from the upper floors of the Building,

Section 2.04.  Neither the Landlord nor any agents of the Landlord have made representations as to the condition of the Demised Premises; its permissible use; and its floor load capacity and condition.  In addition, Tenant acknowledges that Landlord is not responsible for any representations made by any third party or contained in any written material except and unless the representation is contained in this Lease. Further this Lease supersedes all prior agreements (whether oral or written) between Landlord and Tenant.  All understandings and agreements by and between Landlord and Tenant are merged into this Agreement, which alone fully and completely expresses the agreement between them.

Section 2.05.  Tenant has conducted its own due diligence inspections and investigations prior to executing this Lease, accepts the Demised Premises and all matters pertaining to same "as-is" and without representation by Landlord, its agents or representatives.  Tenant specifically accepts the Demised Premises subject to the existing certificate of occupancy, or if there is no certificate of occupancy, Tenant accepts the Demised Premises without the certificate of occupancy.  Landlord shall have no liability with regard to the certificate of occupancy or lack thereof.

Section 2.06    Notwithstanding anything to the contrary herein,  from and after the one year anniversary of the Commencement Date , Landlord or Tenant may terminate this Lease before the designated Expiration Date, by sending to the other party  a written notice of either Landlord's or Tenant's  election (as the case may be)  to so terminate this Lease and the Term hereof; which notice shall specify the effective date of such Lease termination and which effective date shall be no less than one hundred and eighty (180) days from the date of

4

Landlord's or Tenant's (as the case may be) notice of termination, at which time this Lease Term shall be expired and Tenant shall surrender possession of the Demised Premises and yield the same to Landlord in the manner and condition required by Article 6 hereof.

## ARTICLE 3

### Rent

Section 3.01.   Tenant hereby covenants and agrees to pay to Landlord as and in the manner herein provided, the Annual Rent.   Tenant covenants and agrees to pay to Landlord during the Term of this Lease all Additional Rent as herein provided, and Tenant agrees that Landlord shall have the same remedies with respect to a default in payment in Additional Rent as Landlord has with respect to Annual Rent.

Section 3.02.   The Annual Rent shall be paid monthly in advance in twelve (12) equal installments, one such installment to be payable on the first (1st) day of each month during the Term of this Lease. .   Said monthly installments of fixed Annual Rent, as well as all Additional Rent, shall, except as otherwise provided herein with respect to Additional Rent, be paid promptly when due, without notice or demand therefor and without deduction, abatement, or set-off of any amount for any reason whatsoever.

Section 3.03.    Tenant shall pay on its execution of this Lease, the first monthly installment of Annual Rent ($15,000) and the Security Deposit as required under Article 21 hereof ($30,000.00); which sums shall be held by Landlord pending the Effective Date hereof, at which time such payments will be applied to Annual Rent and Security Deposit hereunder.

Section 3.04.   All payments of Rent required to be made by Tenant shall be in lawful money of the United States which are legal tender at the place of payment at the time of payment and all such payments of Rent which are payable to Landlord shall be paid at such place as Landlord may designate from time to time in writing to Tenant. Until otherwise notified, all payments of Rent payable to Landlord shall be paid to Landlord at Landlord's Address.

Section 3.05.   If Tenant shall fail to pay any Rent which comes due and payable by Tenant to Landlord under the terms of this Lease by the fifth (5th) day of such payment's due date (i.e. the 1st day of each month as respects Annual Rent), then Tenant shall pay Landlord a late charge of six cents ($.06) for each dollar of the amount overdue to cover the extra expense associated with such delinquency; which late charge shall be paid by Tenant to Landlord at the time of payment of the delinquent sum. If Tenant shall deliver a check to Landlord which is dishonored for any reason, Tenant shall also pay Landlord, as Additional Rent, an additional sum of $200.00 for Landlord's expenses in connection therewith.

5

ARTICLE 4

Use of Premises

Section 4.01.  The Demised Premises may be used solely for the purpose of the Permitted Use (as defined in Article 1) and for no other purpose.

Section 4.02.  Qualifications As to Use: Tenant shall engage in the Permitted Use in compliance with all Legal Requirements and shall not suffer nor permit the Demised Premises or any part thereof to be used in any manner other than the Permitted Use.  Nor shall Tenant do or permit anything to be done in the Demised Premises, or suffer or permit anything to be brought into or kept in the Demised Premises, which would in any way (i) violate any of the provisions of any grant, lease or mortgage to which this Lease is (or may become) subordinate, (ii) violate any certificates of occupancy of the Building, if any, and any laws, ordinances, rules, regulations or requirements of any public authorities having jurisdiction over the Demised Premises, Tenant or Landlord, (iii) make void or voidable any fire, liability or other insurance policy then in force with respect to the Demised Premises, (iv) make unobtainable at standard rates from reputable insurance companies authorized to do business in New York any all risk or other insurance required to be furnished (or caused to be furnished) by Landlord under the terms of any lease or mortgage to which this Lease is or may become subordinate, (v) cause, or in Landlord's reasonable opinion be likely to cause, physical damage to the Building and/or Land or any part thereof, (vi) constitute a public or private nuisance, (vii) cause the Demised Premises to be vacant/deserted or in Landlord's reasonable opinion appear to be vacant or deserted; or (viii) constitute a pornographic, lewd and/or adult only use. Tenant acknowledges that the foregoing restrictions on the use of the Demised Premises is paramount to Landlord entering into this Lease with Tenant for the Permitted Use, and Tenant agrees that its violation of this Article 4 is a material default and one which shall not be susceptible to cure, and therefore  should Tenant violate these covenants, Landlord may terminate this Lease without providing the Tenant with an opportunity to cure the same.

Section 4.03.   Tenant may not display any merchandise and/or any other items on the sidewalk.

Section 4.04.   Continuous Use; Permits:  Tenant shall continuously and uninterruptedly occupy and use, during the entire Term, the entire Demised Premises for the Permitted Use set forth herein and conduct Tenant's business therein in a reputable manner and maintain quality window displays.  Tenant shall further keep all windows, doors and plate glass in a neat, clean and safe condition and Tenant shall apply for, secure, maintain and comply with all licenses and/or permits and/or authorizations which may be required under Legal Requirements or otherwise for the conduct by the Tenant of the Permitted Use; and to pay, if, as and when due, all license and permit fees and charges to maintain the same.

6

## ARTICLE 5

### Taxes, BID, Water/Sewer, Operating and Utility Expenses

Section 5.01.  Taxes - Tenant shall pay or cause to be paid to Landlord, within ten (10) days of rendition of a statement therefor, Tenant's proportionate share, (as hereinafter set forth), of the Taxes for each  tax year that falls within the Term (and for any period in which Tenant is in possession of the Demised Premises following the Term).

For the purposes of Tenant's share of taxes, Tenant's proportionate share shall be **FIFTY (50%)** percent.

Section 5.02.  BID - If there is a Business Improvement District ("BID") tax due, Tenant shall pay Fifty (50%) percent of the BID tax due for the entire Building, .  The BID tax shall be paid by Tenant within ten (10) days after demand by Landlord and such tax shall be deemed Additional Rent.

Section 5.03.  Water - Tenant may use the existing facilities at the Demised Premises to furnish water to the Demised Premises for consumption at the Demised Premises; and, Tenant shall install within thirty days of the Lease Commencement Date a sub-meter to measure Tenant's consumption at the Demised Premises at Tenant's sole cost and expense; and such installation shall otherwise be in compliance with all Legal Requirements and/or compliance with Article 7 of this Lease.   Notwithstanding anything to the contrary , Tenant shall pay One Hundred (100%) percent of all costs, charges and fees reflected on the water bills issued to the Building(or Landlord)  for the water supply at the Demised Premises until such time as Tenant installs its sub-meter. Once Tenant installs the submeter Tenant shall pay one hundred (100%) percent of the water charges as reflected on the sub-meter and the cost of any charges incurred for the reading of the sub-meter and computation of the amounts due from Tenant thereunder and hereunder; and Tenant acknowledges that Landlord is not responsible for the furnishing of water to the Demised Premises; and Landlord shall have no liability in the event of any disruption, curtailment or suspension of such water service, nor shall Tenant have any abatement in rent as a result of such suspension, curtailment or disruption.  Notwithstanding the foregoing, if during the Term the other portions of the Building become occupied by tenant's under leases and such spaces are serviced by  the same water meter as that which services the Demised Premises, then from and after such tenant is in possession of such space, Tenant's share of the water supply charges as stated above shall be proportionately reduced as determined by Landlord, but in no event shall Tenant's obligation be reduced to less than 50% of all such water costs, fees and charges.  Tenant's obligations hereunder shall survive the Expiration Date or earlier termination of this Lease.

Section 5.04.  Only Landlord shall be eligible to institute tax reduction or other proceedings to reduce the Taxes assessed valuation of the Land and the Building. Landlord shall be under no obligation to contest the Taxes. Tenant shall pay 100% of all taxes imposed upon Tenant's personal property at the Demised Premises. In addition, should Taxes be retroactively

7

assessed for periods prior to the Commencement Date, Tenant shall pay and discharge Tenant's proportionate Share of the same as Additional Rent.

Section 5.05. The certificate, advice or bill of the appropriate official designated by law to make or issue the same or to receive payment of Taxes, or water bills or advice of nonpayment of such items shall furnish evidence that such items are due and unpaid at the time of mailing or issuance of such certificate, advice or bill. The bill of the utility or fuel company shall likewise furnish evidence that such utility or fuel bills are due and unpaid at the time of mailing.

Section 5.06.    Gas/Electric - Tenant may use the existing facilities at the Demised Premises, to furnish electrical and/or gas service to the Demised Premises without any representation or warranty to Tenant as to their sufficiency and state of repair, and Tenant shall within five (5) days of the Commencement Date contract directly with the service provider, and pay any deposits as may be required, and thereafter, pay the electric bill or statement received from the utility service provider (i.e. Consolidated Edison or its successor) when due and before the imposition of late fees or other penalties. Landlord makes no representation as to the adequacy of such service for Tenant's use. Tenant shall maintain the electrical and gas meters servicing the Demised Premises for the benefit of Landlord throughout the term of this Lease and said meter(s) shall remain the property of the Landlord and be surrendered to Landlord in working order. Tenant shall pay One Hundred (100%) Percent of the electrical and/or gas charges for the Demised Premises. Tenant acknowledges that Landlord is not responsible for the supplying of electricity and/or gas to the Demised Premises; and Landlord shall have no liability in the event of any disruption, curtailment or suspension of such electricity or gas service, nor shall Tenant have any abatement in Rent as a result of such suspension, curtailment or disruption. Tenant's obligations hereunder shall survive the Expiration Date or earlier termination of the Term of this Lease.

Section 5.07. Tenant shall pay promptly or caused to be paid all charges for heat, hot water, cold water, gas, electric, fuel oil, telephone, internet or other utilities or services used, rendered or supplied to, upon or in connection with the Demised Premises throughout the Term of this Lease. Landlord is not, nor shall it be, required to furnish to Tenant during the Term of this Lease, heat, hot water, cold water, gas, electricity, fuel oil, telephone, internet or other utilities or services of any kind, nor any other facilities, equipment, labor, material or any services of any kind whatsoever, whether similar or dissimilar. Tenant shall promptly contract with each utility or service provider and open accounts in Tenant's name for service to the Demised Premises. Landlord shall not be responsible to Tenant for the suspension, disruption or curtailment of any heat, hot water, cold water, plumbing, electrical or other utility service or for any telephone, internet or other service for any reason; and Tenant shall not have an abatement or offset in Rent for the failure of any and all such services or systems.

Section 5.08. In the event Tenant fails to pay the water charges as required under Section 5.03 hereof, Landlord may, in Landlord's sole discretion, require Tenant to pay to Landlord, with the monthly installment of Annual Rent, (i) a monthly sum equal to one-twelfth (1/12th) of the total annual amount of Tenant's water charges, as reflected on the meter (or sub-meter) readings performed throughout a Lease Year plus the costs of sub-meter readings if any as contemplated in Section 5.03 above; and (ii) Landlord in Landlord's sole discretion (whether

or not Tenant is default of this Lease) may elect to have Tenant pay with the monthly installment of Annual Rent an amount equal to one twelfth (1/12th) of the Tenant's proportionate share of the Taxes based upon previous year's Taxes plus up to fifteen (15%) percent of such amount for anticipated increases. Landlord shall hold such sums as collected by Landlord hereunder for the payment of Taxes and/or water charges on Tenant's behalf (but only to the extent actually collected from Tenant). If the amount of Tenant's monthly payments exceed the actual amount due, the overpayment shall be credited on Tenant's next succeeding monthly payment for water meter bill payments and/or Taxes if Tenant is not in default hereunder. If the amount of such monthly payments paid by Tenant shall be less than the actual amount due, Tenant shall pay to the Landlord the difference between the amount theretofore paid by Tenant and the actual amount due within ten (10) days after demand from Landlord. Tenant's obligations to pay the water meter bills and/or its proportionate share of the Taxes is Additional Rent and shall survive the Expiration Date or sooner termination of the Term of this Lease.

## ARTICLE 6

### End of Term and Termination

Section 6.01. Upon the Expiration Date or other earlier termination of the Term of this lease, the Tenant shall quit, surrender and yield to the Landlord the Demised Premises, vacant, free of any occupants, subtenants and/or licensees and free of Tenant's personal property (and the personal property of all who claim under or thought Tenant), including any all trade fixtures, equipment and signage (even if attached to the Demised Premises/the Building) and debris, and shall further surrender the Demised Premises otherwise broom clean together with all plumbing, electrical, heating, air cooling and ventilation and other mechanical systems and utility meters in good working order and condition, ordinary wear and tear excepted. In addition, if and to the extent Tenant has performed Alterations, Landlord may require the Tenant remove the same and restore the Demised Premises to substantially the same condition it was in prior to such Alteration   The Tenant's obligation to observe or perform this covenant shall survive the Expiration Date or other earlier termination of the Term of this Lease.

Section 6.02. Anything herein contained to the contrary notwithstanding, if after default in payment of Rent or a violation of any other provision of this Lease, or upon the expiration of this Lease, the Tenant moves out or is dispossessed and fails to remove any of its property prior to such default, removal, expiration of lease, or prior to the issuance of a final order of execution of the warrant, then and in that event, the said property (and the property of all others claiming under or through Tenant) shall be deemed abandoned and shall become the property of the Landlord; who may either retain it as Landlord's property or remove it from the Demised Premises at Tenant's expense. Any such expense incurred by Landlord in so retaining or removing such property shall be deemed Additional Rent and recoverable as damages against Tenant (and all who may be liable for Tenant).

Section 6.03. Tenant acknowledges that possession of the Demised Premises must be surrendered to Landlord at the Expiration Date or sooner termination of the Term of this Lease. Tenant agrees to indemnify Landlord against and save Landlord harmless from any and all costs, claims, losses or liability resulting from delay by Tenant in so surrendering the Demised

9

Premises, including, without limitation, any claims made by any succeeding tenant founded on such delay. The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the Demised Premises as aforesaid will be extremely substantial, will exceed the amount of the fixed Annual Rent and Additional Rent theretofore payable hereunder, and will be impossible to accurately measure. As such, Tenant therefore agrees that if possession of the Demised Premises is not surrendered to Landlord on the Expiration Date or sooner termination of the Term of this Lease, then in addition to the aforesaid indemnity obligations, Tenant shall pay to Landlord for each month and for each portion of any month during which Tenant holds over in the Demised Premises after the Expiration Date or sooner termination of the Term of this Lease, a sum equal to two (2) times the aggregate of that portion of the fixed Annual Rent and Additional Rent which was payable under this Lease during the last full month of the Term hereof. Nothing herein contained, however, shall be deemed to permit Tenant to retain possession of the Demised Premises after the Expiration Date or sooner termination of the Term of this Lease. The aforesaid provisions of this Article shall survive the Expiration Date or sooner termination of this Lease.

## ARTICLE 7

### Signs; Storefront; Alterations; and Tenant's Work

Section 7.01.  Tenant may, subject to Tenant's compliance with the applicable provisions of this Article and with Legal Requirements, erect a sign at the Demised Premises; or at Landlord's election, Tenant shall erect a sign and/or awning at the Demised Premises in accordance with Landlord's specifications, which will be furnished to Tenant.  Tenant shall submit to Landlord detailed drawings of its proposed sign for review and approval by Landlord prior to erecting said sign on the Demised Premises; and if required, Tenant shall procure, at Tenant's sole cost and expense, all appropriate municipal permits for such sign installation. Upon Landlord's approval, which approval shall not be unreasonably withheld, Tenant shall install any such approved signs in compliance with Legal Requirements at Tenant's sole cost and expense.  Notwithstanding, Tenant may maintain its existing signage so long as the same does not violate any Legal Requirements.  Tenant shall keep insured and maintain any and all such signs installed in good condition, repair and operating order and otherwise in compliance with all Legal Requirements at all times. If any damage is done to Tenant's sign, Tenant shall commence to repair same within five (5) days (or earlier, in the event a repair is required to protect against injury to persons or property) and diligently complete such repairs within thirty (30) days (or sooner if there is a threat of damage to person(s) or property) or Landlord may at its option repair same at Tenant's expense.

Section 7.02   Omitted.

Section 7.03.  Tenant shall not perform any Alterations, Tenant's Work or other changes in or to the Demised Premises of any nature without Landlord's prior written consent.  Subject to the prior written consent of Landlord, and to the other provisions of this Article, Tenant, at Tenant's expense, may make interior alterations, installations, additions or improvements which are mere cosmetic and non-structural and which do not require permits, nor affect utility services

10

or plumbing and electrical lines and/or the heating systems and fixtures servicing the Demised Premises or the Building and/or Land by using contractors or mechanics first approved in each instance by Landlord, which approval shall not be unreasonably withheld, subject to Tenant's compliance with the provisions of Section 7.03. All fixtures and all paneling, partitions, railings and like installations or improvements, installed in the Demised Premises at any time, either by Tenant or by Landlord on Tenant's behalf, shall, upon installation, become the property of Landlord and shall remain upon and be surrendered with the Demised Premises unless Landlord, by notice to Tenant, elects to relinquish Landlord's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the Demised Premises by Tenant prior to the expiration of the Lease, at Tenant's expense. Nothing in this article shall be construed to give Landlord title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and Tenant's equipment, but upon removal of any such items from the Demised Premises or upon removal of other installations as may be required by Landlord, Tenant shall immediately and at its expense, repair and restore the Demised Premises (including the Building) to the condition existing prior to installation and repair any damage to the Demised Premises or the Building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the Demised Premises after Tenant's removal shall be deemed abandoned and may, at the election of Landlord, either be retained as Landlord's property or may be removed from the Demised Premises by Landlord at Tenant's expense.

Section 7.04. Tenant's right and performance of any Alterations or Tenant's Work ("Tenant's Work" or "Alterations") shall be further subject to the following provisions:

(a)    Tenant shall, at least thirty (30) days prior to the commencement of any Alterations or Tenant's Work, first submit to Landlord Tenant's Plans covering all phases of Tenant's Work and/or Alterations. Landlord shall then within a reasonable time thereafter provide Tenant with its approval or objections and/or comments; and, if Tenant elects, it may provide Landlord with modified Tenant's Plans to address Landlord's objections. Tenant shall reimburse Landlord within ten (10) days of invoice for all architectural, engineering or other professional fees reasonably incurred by Landlord with respect to the review of Tenant's Plans in connection with a request for Landlord's approval to an Alteration or Tenant's Work and for Landlord's supervision of Tenant's Alterations or Tenant's Work.

(b)    No Alterations or Tenant's Work shall be undertaken until Tenant shall have procured and paid for, so far as the same may be required from time to time, all permits and authorizations of all municipal departments and governmental subdivisions having jurisdiction over the Building and/or the Demised Premises. Landlord shall join, but without expense to Landlord, in the application for such permits or authorizations whenever such action is necessary and is requested by Tenant;

(c)    The cost of such Alterations or Tenant's Work or any other work performed by or on behalf of Tenant shall be paid by Tenant in cash, or its equivalent, so that the Demised Premises and Building shall at all times be free of liens for labor and materials supplied to the Demised Premises whether in connection with Tenant's Work and Alterations or otherwise. If at any time before, during and after construction or at any time during the Term, the Demised Premises and/or Building and/or Land shall be encumbered by any mechanics' and

11

other liens, charges and claims for the payment of money or otherwise, violations and other encumbrances of any and all kinds, nature and description, growing out of or connected with any Tenant's Work and Alterations or any other matter pertaining to the Demised Premises or Tenant, then Tenant shall, within ten (10) days after such request, prove to the satisfaction of Landlord that every such claim, charge or violation has been fully paid, provided for or remedied, and discharged or bonded; and, in any event, discharged of record as against the Land and Building. Landlord may condition its consent to any such Alteration or Tenant's Work upon Tenant's procurement of security, as reasonably determined by Landlord, to insure the lien free completion of such Alteration and/or Tenant's Work.

        (d)    Promptly following the completion of all of Tenant's Work or Alterations, and as soon as reasonably feasible, Tenant shall obtain and furnish to Landlord all appropriate certifications from all municipal or other governmental authorities having jurisdiction (such as certificates of occupancy or completion, as the case may be) to the effect that all such Alterations or Tenant's Work have been performed and completed in accordance with Tenant's Plans and with all Legal Requirements; and Tenant shall furnish evidence that no open permits exist.

<u>ARTICLE 8</u>

<u>Insurance</u>

     Section 8.01.  Tenant shall obtain, pay all premiums and keep in full force and effect during the Term of this Lease or such other period as Tenant or anyone claiming under or through Tenant, shall be in occupancy of the Demised Premises, at its own cost and expense **(i)** a policy of comprehensive general public liability and property damage insurance with a broad form contractual liability endorsement, with minimum limits of liability being a combined single limit with respect to each occurrence of not less than $2,000,000 for injury (or death) and damages to property, under which Tenant is named as the insured, and Landlord is named as certificate holder and additional insured, and under which the insurer agrees to indemnify Landlord (and its individual partners or members or managers, as the case may be) against and hold them harmless from all cost, expense and/or liability arising out of or based upon any and all claims, accidents, injuries and damages in or about the Demised Premises and areas adjacent thereto; **(ii)** workers compensation insurance covering all of Tenant's employees having policy limits and terms that are required by the applicable Legal Requirements, **(iii)** a policy or policies of insurance insuring the leasehold improvements in the Demised Premises and contents thereof against loss or damage due to fire and the risks now or hereafter embraced by the broadest form obtainable of "all risk" coverage, in an amount not less than the full replacement value thereof, naming Landlord and Tenant as insureds, as their interests may appear (it being the intention that Landlord shall have no obligation to restore leasehold improvements or replace contents), **(iv)** a policy covering business interruption in an amount equal to twelve (12) monthly installments of Annual Rent, and **(v)** a policy or policies of insurance insuring the Building and its fixates against loss or damage due to fire and the risks now or hereafter embraced by the broadest form obtainable of "all risk" coverage, in an amount not less than the full replacement value thereof, naming Landlord and it Mortgagee (to the extent known by Tenant) as insureds, as their interests may appear.  The amount of liability insurance coverage required hereunder may be reasonably

12

increased by Landlord from time to time. Tenant must deliver the insurance certificate to
Landlord before Landlord signs this Lease.

Section 8.02. All such policies shall contain a provision that (a) no act or omission of
Tenant shall affect or limit the obligation of the insurance company to pay the amount of any
loss sustained and (b) the same shall be non-cancellable with respect to Landlord without 30
days' prior written notice to Landlord. A certificate of each of such policy, together with
evidence satisfactory to Landlord that the same is fully paid, shall be delivered to Landlord prior
to the Commencement Date and not less than 30 days prior to the expiration date of any then
existing policy during the Term hereof. Tenant hereby agrees that insurance against damage to
the Demised Premises by fire or other casualty shall not be adjusted with the insurance carrier
without the Landlord's consent and that the proceeds thereof shall be payable to the Landlord
(subject, however, to the terms of the Lease which provide that Landlord may not have to
restore). In addition, the casualty insurance insuring the Building shall only be adjusted by
Landlord and the proceeds shall only be payable to Landlord (and if applicable its Mortgagee).
All insurance required to be carried by Tenant pursuant to the terms of this Lease shall be
effected under valid and enforceable policies issued by reputable and independent domestic
insurers licensed to do business in the State of New York and rated in Best's Insurance Guide, or
any successor thereto (or if there be none, an organization having a national reputation) as having
a general policyholder rating of "A-plus, Class X." In the event Tenant shall fail to procure and
place any such insurance, Landlord may, but shall not be obligated to, procure and place the
same, and the amount of the premium paid together with Interest (from the date of Landlord's
procurement of the policy) shall be paid by Tenant to Landlord as Additional Rent upon demand.
Landlord may use the Security Deposit to pay the premiums, in which case, Tenant will
replenish the Security Deposit account upon demand.

Section 8.03.   Tenant shall include in each of its insurance policies relating to the
Demised Premises which does not name the Landlord as an insured (to the extent, if any, that
Tenant maintains any such policies), a waiver of the insurer's right of subrogation against the
Landlord. If such wavier, agreement or permission shall not be, or shall cease to be, obtainable
without additional charge or at all, the insured party shall so notify the Landlord promptly after
learning thereof. In such case, if the Landlord shall so elect and shall pay the insurer's additional
charge therefor, such waiver, agreement or permission shall be included in the policy. Any
failure by Tenant, if named as an additional insured, promptly to endorse to the order of
Landlord, without recourse, any instrument for the payment of money under or with respect to
the policy of which Landlord is the owner or original or primary insured to the extent of
Landlord's interest in such instrument, shall be deemed a default under this Lease. In addition, if
Landlord's insurers impose any requirements upon Landlord regarding the use and/or repair of
the Building or make any recommendations for the use and occupancy Building, Tenant shall
comply with all such requirements at Tenant's expense.

13

## ARTICLE 9

### Subordination. Attornment: Notice to Mortgagees

Section 9.01.    This Lease, and all rights of Tenant hereunder, are and shall be subject and subordinate in all respects, to all present and future mortgages and building loan agreements, if any, (collectively the "Mortgage"), to which the Demised Premises and/or Building and/or Land is or may become subject, whether or not the Mortgage shall also cover other lands and/or buildings, to each and every advance made or hereafter to be made under the Mortgage, and to all renewals, modifications, replacements and extensions of the Mortgage and spreaders, consolidations and correlations thereof.    This Article shall be self-operative and no further instrument of subordination shall be required. In confirmation of such subordination, Tenant shall promptly execute and deliver at its own costs and expense any instrument, in recordable form if required, that Landlord or the holder of any such Mortgage (a "Mortgagee") or any of their respective successors in interest may request to evidence such subordination, and Tenant hereby constitutes and appoints Landlord attorney-in fact for Tenant to execute any such instrument for and on behalf of Tenant.

Section 9.02.    This Lease shall not terminate or be terminable by Tenant by reason of any foreclosure of any Mortgage unless the Mortgagee of the foreclosed Mortgage shall elect in connection therewith to terminate this Lease and the right of Tenant to possession of the Demised Premises. Tenant agrees without further instruments of attornment in such case, to attorn to such Mortgagee, to waive the provisions of any statute or rule of law now or hereafter in effect which may give Tenant any right of election to terminate this Lease or to surrender possession of the Demised Premises in the event such Mortgage is foreclosed, and that unless and until Mortgagee shall elect to terminate this Lease and extinguish the leasehold estate demised hereunder, this Lease shall not be affected in any way whatsoever by any such proceeding or termination. Tenant agrees that it shall take no steps to terminate this Lease, whether or not any Mortgage is foreclosed, without giving prior written notice to the Mortgagee, and a reasonable opportunity to cure (without such Mortgagee being obligated to cure), any default on the part of Landlord under this Lease.

Section 9.03.    If, in connection with the procurement, continuation or renewal of any financing for which the Land and/or the Building represents, collateral in whole or in part, an institutional lender shall request reasonable modifications of this Lease as a condition of such financing, Tenant will not withhold or delay its consent thereto and shall execute and deliver such modification agreement provided that such modifications do not increase the obligations of Tenant under this Lease or materially and adversely affect any rights of Tenant under this Lease.

## ARTICLE 10

### Estoppel Certificate

Section 10.01.    Tenant shall, at any time and from time to time, at the request of Landlord, upon not less than five (5) days' notice, if given in person, or ten (10) days' notice, if

given by mail or by other means, execute and deliver to the Landlord a statement certifying that this Lease is unmodified and in full force and effect (or if there have been modification, that the same is in full force and effect as modified and stating the modifications), certifying the amount of Annual Rental and Additional Rents then due and of dates through which the Annual Rent and any Additional Rent have been paid, and if requested, stating the amount of security on deposit, if any, and stating whether or not, Tenant has any option to extend the Term of the Lease and whether such option was exercised, whether Tenant has any option to purchase the Building or any part thereof (and if so the terms of such option and whether it has been exercised); and whether to the best knowledge of the signer (who shall be a duly authorized officer of Tenant), Landlord is in default in the performance of any of its obligations under this Lease, and, if so, specifying each such default of which the signer may have knowledge, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom the party requesting such certificate may be dealing.

## ARTICLE 11

### Tenant's Liability and Indemnification of Landlord

Section 11.01. Landlord or its agents and/or employees shall not be liable for any damage to property of Tenant or of others entrusted to Landlord or to agents and/or employees of the Landlord, nor for loss of or damage to any property of Tenant by theft, vandalism or otherwise, nor for injury or damage to persons or property resulting from any cause of whatsoever nature, including leaks, fire or other casualty. Landlord shall not be liable for any such damage caused by other tenants or persons in or about the adjacent buildings or caused by operation in construction of any private, public or quasi-public work.

Section 11.02. Tenant shall indemnify Landlord (which term shall include its individual partners, members, agents and employees and its managing agent, if any) against and defend and otherwise save Landlord harmless from (i) any and all claims of whatever nature against Landlord arising from any act, omission or negligence of Tenant, its contractors, licensees, agents, servants, employees, invitees or visitors; (ii) all claims against Landlord arising from any accident, injury or damage whatsoever or howsoever caused to any person or to the property of any person and occurring within the Demised Premises or from the conduct of business at the Demised Premises during the Term of this Lease or at any time Tenant is occupying or causing work (including Tenant's Work and/or Alterations) to be performed in or about the Demised Premises; (iii) all claims against Landlord arising from any accident, injury or damage occurring outside of the Demised Premises, where such accident, injury or damage results or is claimed to have resulted from the conduct of business at the Demised Premises, and/or the negligence or act or omission of Tenant or Tenant's contractors, agents, employees, invitees or visitors, including any claims arising from any act, omission or negligence of Tenant or a third party; (iv) any violation of a Legal Requirement arising from any activities at or upon the Demised Premises by Tenant and/or any party/person claiming under or through Tenant, include the conduct of the permitted Use and/or the conduct of Alterations, Tenant's Work or any other work at the Demised Premises and (v) any breach, misrepresentation, violation or non-performance of any

15

covenant, condition or agreement in this Lease set forth and contained on the part of Tenant to be fulfilled, kept, observed and performed. This indemnity and hold harmless agreement shall include indemnity from and against any and all liability, fines, suits, demands, costs and expenses, including reasonable attorneys' fees, of any kind or nature incurred by Landlord in connection with any such claim, action or proceeding brought thereon, and the defense thereof and/or arising from the enforcement of this indemnity. This indemnity shall survive the Expiration Date or sooner termination of this Lease for claims which have accrued prior thereto.

## ARTICLE 12

### Exculpation of Landlord

Section 12.01.   Tenant shall look only to Landlord's estate and interest in the Demised Premises for the satisfaction of Tenant's remedies for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord for any reason arising out of, or in connection with, this Lease, and Tenant for itself, its successors and/or assigns hereby agrees that no other property or other assets of Landlord or its individual partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of landlord and tenant hereunder or Tenant's use and occupancy of the Demised Premises.

## ARTICLE 13

### Maintenance and Repairs

Section 13.01.  Tenant shall maintain in good condition the Demised Premises as well as all equipment and facilities located therein, and/or located elsewhere within the Building but which are serving the Demised Premises, and  in connection therewith shall make all non-structural repairs to the Demised Premises, including but not limited to, repairs to the floors, ceiling, storefront and sidewalk immediately adjacent to those parts of the Demised Premises, and Tenant further agrees that Landlord shall only make structural repairs to the Building and repairs to the roof of the Building (following reasonable notice to Landlord for the need of such repair), unless such repairs are required as a result of (i) Tenant's or Tenant's agents', servants', contractors', employees' and/or invitees' negligence, acts or omissions to act, or (ii)  any work (including Alterations or Tenant's Work) performed within the Demised Premises or by Tenant or any party claiming through Tenant, or (iii) Tenant's specific manner of use of the Demised Premises (other than mere use of commercial space and any or all of (i),(ii) and/or (iii) being a "Tenant Triggered Repair") in which event Landlord may cause the repair to be performed at Tenant's sole cost and expense.  For the purposes hereof the term "structural" shall mean only the foundation and any load bearing wall and Landlord's obligation to perform such repair shall be only following written notice to Landlord of the condition that requires such structural repair. In addition, Tenant, at Tenant's own expense, shall maintain the plumbing system and fixtures, heating systems and fixtures, air cooling systems and its fixtures, electrical systems and fixtures,

16

and other mechanical systems and equipment located entirely within or exclusively servicing the Demised Premises, if any, all in good order and condition, and shall make any repairs for the proper functioning thereof during the Term hereof and for the proper function thereof following the Expiration Date. When used herein, the term "repairs" shall include all necessary replacements, renewals, alterations, additions and betterments using first quality materials sufficient for the proper maintenance and operation of the Demised Premises. In addition, should a repair be in the nature of an Alteration or Tenant's Work (i.e. the repair affects the roof, Building systems, structural portions of the Building or requires permits), the same shall be performed by the Tenant in accordance with Article 7 hereof. It is specifically agreed that Tenant shall not be entitled to any set off or reduction in part of Rent by reason of the failure of Landlord to comply with the covenants of this Article; and Tenant agrees that Tenant's sole remedy at law in such instance will be by way an action for damages for breach of contract. If required by law, Tenant, at its sole cost and expense, shall install a backflow preventer on any water mains servicing the Demised Premises, and Tenant shall perform the annual testing as required by law.

## ARTICLE 14

### Compliance With Laws

Section 14.01.  Tenant shall give prompt notice to Landlord of any notice it receives of the violation of any law or requirement of any public authority with respect to the Demised Premises or the use or occupation thereof. Tenant shall keep and maintain the Demised Premises and Building in compliance with Legal Requirements, including the performance of all annual and other inspections required by the City of New York (i.e. annual boiler inspections),  and Tenant shall promptly cure violations of any  Legal Requirements all at Tenant's  sole cost and expense, and without regard to the cost to be incurred in connection with such compliance provided however, structural alterations or repairs to the Building will only be required if the compliance and/or alteration or repair is a Tenant Triggered Repair. Tenant shall not do or permit any act or thing to be done in, to or about the Demised Premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Landlord with respect to the Demised Premises, or which shall or might subject Landlord to any liability or responsibility to any person or for property damage, nor shall Tenant keep anything in the Demised Premises except as now or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization or other authority having jurisdiction, and then only in such manner and such quantity so as not to increase the rate of fire insurance applicable to the Building, nor use the Demised Premises in a manner which will increase the insurance rate for the Building or any property located therein over that in effect prior to the commencement of Tenant's occupancy. Tenant shall cause any and all violations to be dismissed and discharged of record as the case may be and Tenant is to pay all costs, expenses, fines, penalties or damages, which may be imposed upon Landlord by reason of Tenant's failure to comply with the provisions of this Article, including the expenses or fines imposed by reason of the issuance of violations, and all such expenses and/or unpaid fines shall be deemed Additional Rent. Landlord reserves the right to prescribe the weight and position of all safes, machines and mechanical equipment. Such

17

installations shall be placed and maintained by Tenant, at Tenant's expense, in settings sufficient, in Landlord's judgment, to absorb and prevent vibration, noise and annoyance. Tenant shall procure and maintain all permits and licenses as may be required for the lawful operation of the Permitted Use and for the sale of the goods carried by Tenant.

Section 14.02. Tenant shall, during the Term hereof and at all other times in which Tenant or anyone claiming under or through Tenant is occupying the Demised Premises, comply with all environmental Legal Requirements affecting the Land and/or Building and Tenant's Permitted Use; and Tenant agrees not to do or permit anything to be done at the Demised Premises which would violate any environmental Legal Requirements. Tenant shall hold the Landlord harmless from and against any and all claims, liability, loss, costs and expenses incurred by Landlord by reason of Tenant, Tenant's agents, servants and employees violation of an environmental Legal Requirement; the storage or use of hazardous substances at the Demised Premises, whether in connection with Tenant's business or Tenant's Work or Alterations and/or their acts or omissions to act, or negligence with respect thereto. For the purposes hereof "hazardous substance" shall mean banned or restricted or regulated substances, waste, pollutants, asbestos, volatile hydrocarbons, petroleum by-products and restricted pesticides and for this Permitted Use also includes medical and other regulated wastes; and "environmental Legal Requirement" shall mean federal, state, and local legal requirements, standards, regulations and common laws relating to the use, generation, storage and/or disposal of hazardous substances and/or relating to the environment and human protection and environmental matters now or hereafter in effect. The indemnity provided herein shall survive the Expiration Date or earlier termination of this Lease.

## ARTICLE 15

### Brokerage

Section 15.01.   Tenant and Landlord represent and warrant to each other that they have not dealt with any broker in connection with this Lease, and neither party has an obligation to pay any broker or any other third party a commission or fee by reason of this Lease Agreement; and each does hereby agree to indemnify the other against and hold the other harmless from any claim of or liability to any broker, agent, or finder who claims to be entitled to a fee because they have dealt with such party (i.e. the indemnifying party) in connection with the execution and delivery of this Lease.

## ARTICLE 16

### Refuse: Tenant's Covenants

Section 16.01.  Tenant shall, at its sole cost and expense, cause all garbage/refuse/debris at or from the Demised Premises to be stored in sealed containers and to be removed from the

18

Demised Premises in accordance with the Legal Requirements.  In addition, Tenant shall, at Tenant's sole cost and expense, cause all medical waste (and such other waste generated from the Permitted Use as is regulated under Legal Requirements) to be stored and carted away from the Building in accordance with all Legal Requirements and environmental Legal Requirements. Tenant shall not suffer or permit Tenant's employees or any persons making deliveries to or from the Demised Premises or garbage removal therefrom, to leave any food, garbage containers or other matter standing upon the streets, sidewalks, alleys or parking areas adjacent to the Building, and if Tenant shall fail to comply with the foregoing provisions of this of this Section , Landlord, in addition to all other remedies provided in this Lease and at law, may remove any garbage containers or other matter (including regulated waste) so left standing, at Tenant's expense, without any liability on the part of Landlord therefor. Tenant shall hold Landlord harmless from any sanitation or other fines or penalties that may be imposed by reason of Tenant's non-compliance and shall cause the condition that gave rise to such fine to be remedied and/or abated; and in addition, Tenant shall indemnify the Landlord  and Landlord Parties from any claims asserted and/or liabilities and losses incurred by reason of Tenant's failure to properly store, handle and discard any such medical or other regulated waste.

Section 16.02.  Tenant also agrees throughout the Term hereof, at its sole cost and expense to:

(i)     Take all measures necessary to insure that its business to be conducted at the Demised Premises shall be conducted at all times in a manner to maintain decorum in and around the Demised Premises consistent with the neighborhood in which the Demises Premises is situated.

(ii)    Keep the Demised Premises free from any and all hazardous substances and any medical or other regulated waste that is not in compliance with applicable Legal Requirements and/or environmental Legal Requirements.

(iii)   Cause the Demised Premises to be cleaned in a manner satisfactory to Landlord, and to be exterminated against infestation by vermin, roaches or rodents regularly, and, in addition, whenever there shall be evidence of infestation.

(iv)    Not store or erect anything on the sidewalk, roof or exterior walls of the Building.

(v)     Not use the plumbing facilities for any purpose other than their intended uses for which they are constructed; no foreign substance of any kind shall be thrown therein and the expense of any breakage, stoppage or damage resulting from a violation of this provision shall be borne by Tenant.

(vi)    Keep the sidewalks immediately in front of and adjacent to the Demised Premises and eighteen (18") inches into the street clean of debris and free from snow and ice; and repair and replace such sidewalks as necessary.

(vii)   Comply with all recycling laws and requirements.

19

Section 16.03.   The failure of Tenant to adhere to the foregoing covenants stated in this Article 16, shall be deemed a material default under this Lease, granting Landlord the right to exercise its remedies for a breach under this Lease, which if not fully cured will entitle the Landlord to terminate this Lease.

## ARTICLE 17

### Notices

Section 17.01.   Every notice, approval, consent or other communication authorized or required by this Lease shall not be effective unless same shall be in writing and sent either by hand delivery or postage prepaid by United States registered or certified mail, return receipt requested, or by national overnight courier for next business day delivery and in either case addressed or directed to the other party as follows:

If to the Landlord:                                at Landlord's Address

with a courtesy copy to:                   OKIN EDELMAN P.C.
                                                      3000 Marcus Avenue, Suite 3W10
                                                      Lake Success, NY 11042
                                                      Attn.: Glen S. Edelman, Esq.
                                                      (516) 303-1450 - FAX (516) 303-1449
                                                      Email: gedelman@okinedelman.com

If to Tenant:            at Tenant's Address

with a courtesy copy to:                   Windels Marx, Lane & Mittendorf, LLP
                                                      156 West 56th Street,
                                                      New York, NY 10019
                                                      Attn.: Charles E. Simpson, Esq.
                                                      (212) 237-1070 - FAX (212) 262-1215
                                                      Email: csimpson@windelsmarx.com

Any notice sent by hand/personal delivery shall be deemed given when delivered; any notice sent by postage pre-paid, registered or certified mail shall be deemed given two (2) business days after deposit with the U.S. Postal Service and any notice sent via overnight courier for next business day delivery shall be deemed given the next business day.  The parties  acknowledges that a notice sent by Landlord's attorney on Landlord's behalf or by Tenant's attorney on Tenant's behalf shall be a valid notice as if sent from Landlord or Tenant individually, as the case may be, and the parties further agree that the failure to send a courtesy copy to such party's attorney shall not render any Notice defective.

20

ARTICLE 18

Assignment and Sublease

Section 18.01.  Tenant may not, without the express prior written consent of Landlord, sublet, assign or transfer this Lease or the Demised Premises or any part thereof, or the interest of Tenant in the Demised Premises or any sublease or rentals thereunder, or mortgage, pledge, or encumber its interest in any of the foregoing.  The making (whether with Landlord's consent or not) of any assignment, mortgage, pledge, encumbrance or subletting, in whole or in part, shall not operate to relieve Tenant from Tenant's obligations under this Lease and, notwithstanding any such assignment, mortgage, pledge, encumbrance, subletting or Landlord's collection of any rents from such assignee, sublessee or occupant. Tenant shall remain liable for the payment of all Rent and for the due performance of all the covenants, agreements, terms and provisions of this Lease to the full end of the Term of this Lease, whether or not there shall have been any prior termination of this Lease by summary proceedings or otherwise. Any direct or indirect transfer by one (1) or more transfers which alone or in the aggregate constitute a transfer of a controlling interest in Tenant, if Tenant is a partnership, joint venture or limited liability company, or any direct or indirect transfer by one (1) or more transfers which alone or in the aggregate constitute a transfer of a controlling stock interest of Tenant or a partner of Tenant, if Tenant or a partner of Tenant is a corporation, shall be deemed to be an assignment of this Lease.

Section 18.02.  (a)    If Tenant intends to effect an assignment of this Lease or sublease of the entire Demised Premises, it shall provide Landlord with a statement of the information and materials required by subparagraph (i) through (iii) below ("Tenant's Statement") no less than twenty (20) days before the proposed commencement date of such assignment or sublease. Tenant's Statement shall be in writing and sent to Landlord in accordance with the notice provision of this Lease and contain the following information and/or terms:

(i)    The name and address of the proposed assignee or sublessee, as the case may be (hereafter the "Proposed Transferee"), together with the name and address of the principal officers and shareholders and/or members of such Proposed Transferee if the Transferee is a legal entity;

(ii)    The material terms and conditions of the proposed assignment or sublease including the intended use of the Demised Premises by the Proposed Transferee following the assignment or sublease, together with a duplicate original or true copy of the proposed assignment or sublease instrument.

(iii)    Banking, financial and other credit information relating to the Proposed Transferee, reasonably sufficient to enable Landlord to determine its financial responsibility.

Section 18.03.    Landlord's approval of any requested assignment shall be in Landlord's sole discretion  and Landlord  reserves the right to condition any consent that it may give under this Article 18 to such terms, modifications, conditions or undertakings that the Landlord may, in

21

its sole discretion, require, including  (i) Tenant or its assignee's payment to Landlord, as Additional Rent, of an assignment fee of $5000.00 and the payment/reimbursement of Landlord's reasonable expenses, including attorneys' fees, incurred in connection with Tenant's request; (ii) in the case of an assignment of the Lease or subletting of the entire Demised Premises, the delivery of a suitable guarantor who delivers a guaranty in a form acceptable to Landlord's counsel, further limited in the case of sublease, however, to the obligations under the sublease; (iii) in the case of an assignment of Lease, delivery to Landlord of a duplicate original executed assignment agreement with the assignee's assumption of the Lease, in a form acceptable to Landlord's counsel; and (iv) in case of a sublease, the delivery to Landlord of a duplicate original sublease agreement which contains provisions which establish that (a) it shall be expressly subject to this Lease; (b) it not be assigned, encumbered or otherwise transferred or the subleased premises further sublet by the sublessee in whole or in part, or any part thereof suffered or permitted by the sublessee to be used or occupied by others, without the prior written consent of Landlord in each instance; (c) in the event of termination or re-entry by Landlord under this Lease, Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (1) be liable for any previous act or omission of Tenant under such sublease, (2) be subject to any offset, not expressly provided in such sublease, which thereto accrued to such subtenant against Tenant, (3) be bound by any previous modification of such sublease or by any previous prepayment of more than one month's rent; or (4) be responsible for the return of any security deposited with Tenant under the sublease.

Section 18.04.   Neither any assignment of Tenant's interest in this Lease nor any subletting, occupancy or use of the Demised Premises or any part thereof by any person other than Tenant, nor any collection of rent by Landlord from any person other than Tenant, nor any application of any such rent as aforementioned shall, in any circumstances, relieve Tenant of its obligations to fully observe and perform the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed or be construed as Landlord's consent to any such assignment or subletting. Further, any assignment of this Lease and/or subletting of the Demised Premises shall not serve to release Tenant from its obligations hereunder, and, despite any such assignment and/or subletting, Tenant shall remain liable under this Lease, jointly and severally with such assignee or sublessee, as the case may be.

Section 18.05.  Any consent by Landlord herein contained or hereafter given to any act or acts for which Landlord's consent is by the terms hereof required, shall be held to apply only to the specific transaction hereby or thereby approved.


ARTICLE 19

Default Provisions

Section 19.01.  If Tenant defaults in fulfilling any of the covenants of this Lease other than the covenants for the payment of Annual Rent or Additional Rent; or if the Demised Premises becomes vacant or deserted; or if any execution or attachment shall be issued against

22

Tenant or any of Tenant's property whereupon the Demised Premises shall be taken or occupied by someone other than Tenant; or if this Lease be rejected under §365 of Title 11 of the U.S. Code (Bankruptcy Code); or if the Demised Premises becomes deserted, then, in any one or more of such events, upon Landlord serving a written seven (7) day notice upon Tenant specifying the nature of said default and upon the expiration of said seven (7) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of nature that the same cannot be completely cured or remedied within said seven (7) day period, and if Tenant shall not have diligently commenced curing such default within such seven (7) day period, and shall not thereafter with reasonable diligence and in good faith, continue to remedy or cure such default, with such remedy or cure being completed within thirty (30) days of Landlord's initial default notice, then Landlord, may serve a written three (3) days' notice of cancellation of this Lease upon Tenant, and upon the expiration of said three (3) days this Lease and the Term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed as the expiration date and Tenant shall then quit and surrender the Demised Premises to Landlord in the manner and condition required under this Lease, but Tenant shall remain liable as hereinafter provided.

Section 19.02. If the notice provided for in 19.01 hereof shall have been given, and the Term shall expire as aforesaid; or if Tenant shall make a default in the payment of any installment of the Annual Rent reserved herein or in any item of Additional Rent herein mentioned or any part of either, or in making any other payment herein required and Tenant shall have failed to fully cure such monetary default within three (3) days following Landlord's three (3) day notice (which may be the statutorily imposed three (3) day notice and not an additional notice); then and in any of such events, Landlord may without further written notice, terminate this Lease and Tenant shall quit and surrender possession of the Demised Premises as if such date was the date fixed for the end of the Term and Landlord may re-enter the Demised premised either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise.

## ARTICLE 20

### Cumulative Remedies; Landlord's Right to Perform; Fees; Waivers

Section 20.01. In case of any such default, re-entry expiration and/or dispossess by summary proceedings or otherwise, (a) the Rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Landlord may re-let the Premises or any part or parts thereof either in the name of Landlord or otherwise, for a term or terms, which may at Landlord's option be less than or exceed the time period which would otherwise have constituted the balance of the Term of this lease and may grant concessions or free rent or charge a higher rental than that in this Lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Landlord as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the Rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the Demised Premises for each month of the period which would otherwise have constituted the balance of the Term of this Lease. The failure of Landlord to re-let the Premises or any part or parts thereof shall not release or affect Tenant's liability for damages, and

23

Landlord shall not be obligated to attempt to re-let the Demised Premises. In computing such liquidated damages there shall be added to the said deficiency such expenses as Landlord may incur in connection with re-letting, such as legal expenses, attorneys' fees, brokerage, advertising and for keeping the Demised Premises in good order or for preparing the same for re-letting plus Interest. Any such liquidated damages shall be paid in monthly installments on the rent day specified in this Lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Landlord to collect the deficiency for any subsequent month by a similar proceeding. Under any of the circumstances hereinabove mentioned in which Landlord has the right to hold Tenant liable for the liquidated damages on the rent days specified herein to pay Landlord the amounts due, Landlord shall have the option, in lieu of holding Tenant so liable, of recovering from Tenant as damages for loss of the bargain and not as a penalty, at the time of the early termination of this Lease an aggregate sum which represents the then present worth of total Annual Rent and total Additional Rent due under this Lease plus Interest. Landlord, in putting the Demised Premises in good order or preparing the same for re-letting may, at Landlord's option, make such alterations, repairs, replacements, and/or decorations in the Demised Premises as Landlord, in Landlord's sole judgment, considers advisable and reasonably necessary for the purpose of re-letting the Demised Premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid. Landlord shall in no event be liable whatsoever for failure to re-let the Demised Premises, or in the event that the Demised Premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any of such net rents collected over the sums payable by Tenant to Landlord hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Landlord shall have the right of injunction and the right to invoke any remedy allowed at law or in equity. Tenant hereby expressly waives any rights of redemption granted by, or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of Demised Premises, the violation by Tenant of any of the covenants and conditions of this lease, or otherwise.

Section 20.02. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this Lease, then, unless otherwise provided elsewhere in this Lease, Landlord may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder. If Landlord, in connection with the foregoing or in connection with any default in the covenant to pay Rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in collecting such Rent or other expenditure due from Tenant, then Tenant will reimburse Landlord for such sums so paid or obligations incurred with Interest and costs. Should Landlord be required to institute an action or proceeding or defend an action or proceeding by reason of a default of this Lease by Tenant, Tenant shall also pay Landlord's legal fees and costs incurred in connection therewith with Interest. The foregoing expenses incurred by reason of Tenant's default shall be deemed to be Additional Rent hereunder and shall be paid by Tenant to Landlord within fifteen (15) days of rendition of any bill or statement to Tenant therefor. If Tenant's term shall have expired at the time of making such expenditures or incurring of such obligations, such sums shall be recoverable by Landlord as damages with Interest.

24

Section 20.03.  No covenant, agreement, term, provision or condition of this Lease shall be deemed to have been waived by Landlord unless duly authorized in writing and signed by the Landlord.  Consent of Landlord to any act or matter must be in writing and shall apply only with respect to the particular act or matter to which such consent is given and shall not relieve Tenant from the obligations wherever required under this Lease to obtain the consent of Landlord to any other act or matter.  Receipt or acceptance of Rent by Landlord shall not be deemed to be a waiver of any default under the covenants, agreements, terms, provisions and conditions of this Lease, or of any right which Landlord may be entitled to exercise under this Lease.  In the event that Tenant is in arrears in the payment of Rent, Tenant waives Tenant's right, if any, to designate the items against which any payments made by Tenant are to be credited and Tenant agrees that Landlord may apply any payments made by Tenant to items of unpaid Rent, irrespective of and notwithstanding any designation or request by Tenant as to the items against which any such payments shall be credited.

Section 20.04.  **The parties hereto waive a trial by jury on any and all issues arising in any action or proceeding or counterclaim between them or their successors and assigns under or connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Demised Premises and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Landlord commences any proceeding or action for possession, including a summary proceeding, Tenant shall <u>not</u> interpose <u>any</u> counterclaim of whatever nature or description in any such proceeding except for statutory mandatory counterclaims.**

## ARTICLE 21

### Security Deposit

Section 21.01.  Tenant has agreed to deposit with Landlord upon the Tenant's execution of this Lease the amount of **THIRTY THOUSAND AND 00/100 ($30,000.00) DOLLARS** as the security deposit ("Security Deposit") for the full and faithful performance by Tenant of all the terms, covenants and conditions of this Lease upon Tenant's part to be performed or observed, which shall be promptly returned to Tenant following the Expiration Date, provided that Tenant has fully and faithfully carried out all of said terms, covenants and conditions on Tenant's part to be performed or observed.  Tenant shall increase the Security Deposit each Lease Year such that the Security Deposit shall always equal **TWO (2) MONTHS** of the then current Annual Rent.  Landlord shall have the right to apply any part of said Security Deposit to cure any default of Tenant, and if Landlord does so, Tenant shall, upon demand, deposit with Landlord the amount so applied so that Landlord shall have the full Security Deposit described above on hand at all times during the Term of this Lease. The failure of Tenant to replenish any of the Security Deposit so applied by Landlord shall constitute a default by Tenant hereunder and entitle Landlord to avail itself of the remedies provided in this Lease or at law for the non-payment of Rent. In the event of a sale or lease of the Building, Landlord shall transfer so much of the Security Deposit that Landlord is then holding and to which Landlord has no claims against to the vendee or lessee and following such transfer Landlord shall be considered released by Tenant

25

from all liability for the return of such Security Deposit and Tenant shall look solely to the new landlord for the return of the said Security Deposit, and it is agreed that this shall apply to every transfer or assignment made of the Security Deposit to a new landlord. In the absence of evidence satisfactory to Landlord of any assignment of the right to receive the Security Deposit, or the remaining balance thereof, Landlord may return the Security Deposit to the original tenant, regardless of one or more assignments of the Lease itself. No holder of a mortgage to which this Lease is subordinate shall be responsible in connection with the security deposited hereunder, by way of credit or payment of any Rent or otherwise, unless such mortgagee actually shall have received the security deposited hereunder.

Section 21.02.   The use of the Security Deposit, as provided in this Article 21, shall not be deemed a waiver of any other rights and remedies to which Landlord is entitled under the provisions of this Lease by reason of such default, it being intended that Landlord's right to use the whole or any part of the security shall be in addition to but not in limitation of any such other rights and remedies; and Landlord may exercise any of such other rights and remedies independent of or in conjunction with its rights under this Section.

ARTICLE 22

Damage or Destruction

Section 22.01.  (a)      If the Building or any part thereof or any other portion of the Demised Premises shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Landlord and this Lease shall continue in full force and effect except as hereinafter set forth.

(b)      If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be restored by Landlord, subject to Landlord's rights and limitations under the then applicable Legal Requirements and to Landlord's receipt of insurance proceeds for such casualty, and if the casualty is not caused or created by Tenant (or anyone claiming under or through Tenant), the Annual Rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the Demised Premises which is usable; provided however that Landlord's restoration shall be limited to restoring the structural portions of the Building/Demised Premises and the Building's roof ("Landlord's Restoration"), and in no event shall Landlord be required to retore and/or replace non-structural partitions/walls and other leasehold improvements or betterments existing or made and/or installed by or on behalf of Tenant, and Landlord shall further have no obligation to repair/restore/replace any damage to any of Tenant's Work or Alterations, Tenants trade fixtures, furnishings or equipment and contents all of which shall be Tenant's obligation to repair, replace or restore;

(c)  If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionably paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Landlord to the extent of Landlord's Restoration (it being understood, that Landlord shall have no obligations to repair/replace/restore improvements or betterments made

26

and/or installed by or on behalf of Tenant, any of Tenant's Work or Alterations and Tenants trade fixtures, furnishings or equipment-- all of which shall be Tenant's obligation to repair, replace or restore), subject to Landlord's right to elect not to restore the same as hereinafter provided; and

(d) (i) If the Demised Premises is rendered wholly unusable or (whether or not the Building is damaged in whole or in part) or (ii) if the Building shall be so damaged that the Owner shall elect to not rebuild the Building or the demised premises, as the case may be or (iii) if the restoration of the Building (or as the case may be the Demised Premises), in Landlord's reasonable determination, will cost in excess of the net insurance proceeds available to Landlord for such casualty or if the holder of Landlord's Mortgage will not apply the proceeds to such restoration, then in any of such events, Landlord may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice, the term of this Lease shall expire as fully and completely as if such date were the date set forth above for the termination of this Lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice, however, to Landlord's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any Rent owing shall be paid up to such date and any payments of Rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein and subject to the approval of any holder of any Mortgage encumbering the Building, Landlord shall make the repairs and restorations under the conditions of (b) and (c) hereof to the extent of Landlord's Restoration obligations, with all reasonable expedition, subject further to delays due to adjustment of insurance claims (and receipt of such proceeds), labor troubles and causes beyond Landlord's control. After any such casualty, Tenant shall cooperate with Landlord's restoration by removing from the Demised Premises as promptly as is reasonably possible, all of Tenant's salvageable inventory and movable equipment, fixtures, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Landlord that the Demised Premises are substantially ready for Tenant's occupancy.

(e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Tenant acknowledges that Landlord will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements (including Tenant's Work or Alterations and/or Tenant Changes, or appurtenances removable by Tenant and agrees that Landlord will not be obligated to repair any damage thereto or replace the same.

(f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this Article shall govern and control in lieu thereof.

27

## ARTICLE 23

### Condemnation

Section 23.01. If the whole or any material part of the Demised Premises shall be acquired or condemned by Eminent Domain for any public or quasi-public use or purpose, or a material part of the Building and/or Land is condemned and such material condemnation precludes Tenant's access to the Demised Premises, then and in such events, the term of this Lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said Lease and Tenant assigns to Landlord, Tenant's entire interest in any such award. Tenant may not intervene in any such proceeding.

Section 23.02. The terms "condemnation", and "taking" and variants thereof as used herein shall include any agreement or deed given in lieu of or in anticipation of the exercise of the power of eminent domain between Landlord and any governmental authority authorized to exercise the power of that eminent domain.

Section 23.03. In the event there is a "taking" of less than the whole or any material part of the Demised Premises and which "taking" does not preclude Tenant's ingress and egress to the Demised Premises, or if such "taking" is temporary -- i.e., no more than 180 days, this Lease shall continue in full force and effect, except the Annual Rent shall be adjusted for the period of the "taking" to reflect the size of the Demised Premises prior to the taking times a fraction whose numerator is the square footage of the Demised Premises after the taking and whose denominator is the square footage before the taking. In the event the partial "taking" is not temporary, Landlord shall apply any award it receives to the cost of restoring the Building to a complete unit, if necessary. Notwithstanding the foregoing if there is a partial "taking" which is not temporary (i.e., more than 180 days) and such "taking materially affects Tenant's use of the Demised Premises, then the term of the Lease shall cease and Section 23.01 shall control.

## ARTICLE 24

### Governing Law

Section 24.01. This Lease and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State of New York. Tenant consents to the jurisdiction of the Courts of the State of New York and of the City of New York located in the County of New York.

## ARTICLE 25

### Partial Invalidity

Section 25.01. If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, at any time or to any extent, be invalid or

28

unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

## ARTICLE 26

### Interpretation; Entire Agreement

Section 26.01. Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require. The section headings used herein are for reference and convenience only and shall not enter into the interpretation hereof. The terms "Landlord" and "Tenant" whenever used herein shall mean only the owner at the time of Landlord's or Tenant's interest herein, and upon any sale or assignment of the interest of either Landlord or Tenant herein, their respective successors in interest and/or assigns shall, during the term of their ownership of their respective estates herein, be deemed to be Landlord or Tenant, as the case may be.

Section 26.02. This Lease contains the entire agreement between the parties hereto. All understandings, representations and warranties, whether oral or written, made by the Landlord or on behalf of the Landlord are merged into this Lease, which shall supersede any prior agreement, representation and warranty and no representation, warranty or agreement shall be effective unless expressly set forth herein.

## ARTICLE 27

### Glass

Section 27.01. If and when glass is installed at the Demised Premises, Tenant shall keep and maintain in good condition all of the glass at the Demised Premises for the benefit of the Landlord. If the Tenant fails to do so, the Landlord may maintain and/or repair the glass, as the case may be, and charge Tenant the amount of such expenses incurred therefor, which Tenant shall pay as Additional Rent upon Landlord's demand therefore. Landlord shall have the right to collect the same from the Tenant as Additional Rent, it being understood that the Tenant at its own cost and expense is responsible for replacing all broken or cracked glass.

## ARTICLE 28

### Quiet Enjoyment

Section 28.01. Landlord covenants and agrees with Tenant that upon Tenant paying the Rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this Lease and to the ground leases and mortgages hereinbefore mentioned.

29

ARTICLE 29

Failure to Give Possession

Section 29.01. If Landlord is unable to give possession of the Demised Premises on the date of commencement of the term hereof, because of the holding-over or retention of possession of any tenant, under-tenant or occupants, or if Landlord is delayed in completing Landlord's Work, if any, Landlord shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed to extend the term of this lease, but the Rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Landlord shall have given Tenant written notice that the Landlord is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the Demised Premises or to occupy premises other than the Demised Premises prior to the date specified as the commencement of the term of this Lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this Lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the NYRPL.

ARTICLE 30

Access to Premises

Section 30.01. Landlord or Landlord's agents shall have the right (but shall not be obligated) to enter upon the Demised Premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Landlord may deem necessary and reasonably desirable to any portion of the Building and/or Demised Premises or which Landlord may elect to perform, in the Demised Premises (Building and/or Land), following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this Lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Landlord to use and maintain and replace pipes and conduits in and through the Demised Premises and to erect new pipes and conduits therein. Landlord may, during the progress of any work at the Demised Premises, take all necessary materials and equipment into said Demised Premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of Rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise; provided however, that nothing above shall impose upon Landlord any repair obligation (except as expressly set forth herein.) Throughout the Term hereof Landlord shall have the right to enter the Demised Premises (Building and/or Land) at reasonable hours for the purpose of showing the same to prospective Purchasers or mortgagees of the Building and/or Land, and during the last eight (8) months of the Term for the purpose of showing the same to prospective tenants and may, during said eight (8) months period, place upon the Demised Premises the usual notice "To Let" and "For Sale" notices which notices Tenant shall permit to

30

remain thereon without molestation. If Tenant is not present to open and permit an entry into the Demised Premises, Landlord or Landlord's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Landlord or its agents liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of Term Tenant shall have removed all or substantially all of Tenant's property therefrom. Landlord may immediately enter, alter, renovate or redecorate the Demised Premises (Building and/or Land) without limitation or abatement of Rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this Lease or Tenant's obligations hereunder. Landlord shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the Building and to change the name, number or designation by which the Building may be known.

## ARTICLE 31

### Sprinklers

Section 31.01. Anything elsewhere in this Lease to the contrary notwithstanding, if following the Commencement Date the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system, or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system, by reason of Tenant's business or manner of use of the Demised Premises, or the location of partitions, trade fixtures or other contents of the Demised Premises, or if any such sprinkler system installations, changes, modifications, additional sprinkler heads etc. become necessary to prevent imposition of a penalty or charge, Tenant shall, at Tenant's sole cost and expense, promptly perform such work, whether the work be structural or non-structural in nature.

## ARTICLE 32

### Illegal Drug Use

Section 32.01. If due to the acts or omissions to act of Tenant, or any of its officers, directors, employees or contractors, there are any arrests in the Demised Premises for illegal drug-selling or illegal drug usage, Landlord may immediately terminate this Lease and this Lease shall be deemed null and void.

31

ARTICLE 33

The Americans with Disabilities Act of 1990

Section 33.01.  The Americans with Disabilities Act of 1990, together with the rules and regulations promulgated thereunder, as such law, rules and regulations may now or hereafter be amended or restated, are hereinafter referred to as the "ADA".  If the Demised Premises or any portion thereof are used by Tenant, its subtenants, successors and/or assigns as a "place of public accommodation", as such term is defined in the ADA, Tenant shall (a) comply with all present and future requirements of the ADA as they relate to the Demised Premises, whether or not such compliance requires structural or non-structural alterations to be made; and (b) indemnify and hold harmless Landlord from and against all claims, actions, costs, damages, penalties, losses, attorney's fees, and liabilities Landlord may incur by reason of any action or proceeding instituted against Tenant and/or Landlord by reason of the use of all or part of the Demised Premises as a place of public accommodation and/or Landlord's and/or Tenant's alleged failure to comply with the ADA.   All changes, alterations, additions, improvements, and repairs made by Tenant to the Demised Premises shall be performed in compliance with all applicable requirements of the ADA.

ARTICLE 34

Miscellaneous

Section 34.01.  This Lease may not be extended, renewed, terminated or otherwise modified or amended except by an instrument in writing signed by the party against whom enforcement of any such modification is sought.

Section 34.02.  This Lease is offered to Tenant for signature with the understanding that it shall not be binding upon Landlord unless and until Landlord shall have executed and delivered a fully executed copy of this Lease to Tenant.

Section 34.03.  If at any time during the term hereof there shall be imposed on Landlord (directly or indirectly) any rental, use or occupancy fee or tax with respect to this Lease and/or the Demised Premises, other than a tax which becomes in lieu of Taxes, Tenant shall pay the same to Landlord within ten days after demand therefore.

Section 34.04.  With respect to any provision of this Lease which requires Landlord's consent or approval, Tenant shall not be entitled to make any claim for, and Tenant hereby expressly waives any claim for damages, it being understood and agreed that Tenant's sole remedy therefor shall be an action for specific performance.

Section 34.05.  Tenant and the individual signing this Lease on behalf of Tenant, jointly and severally represent that the corporate tenant is a valid and existing entity and they have the authority to enter into and sign this Lease on behalf of Tenant, knowing that the Landlord is relying thereon. In addition,  Tenant's  execution and delivery of this Lease and Tenant's performance and/or observance of the terms, covenants and conditions hereof will and does not

32

violate any law, rule, or regulation of any governmental entity or, or violate any judgment, order, writ, injunction, or decree of any court, administrative agency, or other governmental body applicable to the Tenant or any properties or assets of Tenant, and Tenant does not need the consent or approval of any third party or of any court, administrative agency, or other governmental entity or body.

Section 34.06.   Tenant to induce the Landlord to enter into this Lease on its terms, shall have its principal Isaiah Owen deliver his personal  guaranty of this Lease on behalf of Tenant, which guaranty shall be in the form of Guaranty annexed hereto as Exhibit B.

Section 34.07.   This Lease may be executed simultaneously in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument so long as each of Landlord and Tenant named herein executes and delivers its counterpart to the other party or such other parties counsel. Each of Tenant and Landlord may exchange their respective signatures to this Lease, electronically (i.e. facsimile or other electronic imaging such as scanned pdf sent via email or via Doc-u-sign or similar software) and any such party's signature exchanged in such manner shall be deemed to be original signatures for any and all purposes.

Section 34.08     Approval of Lease—This Lease is subject to approval of the U.S. Bankruptcy Court For The Southern District of New York ("Court"), and upon the issuance of an order or decree authorizing this Lease, the Effective Date shall occur and this Lease shall then be in full force and effect.  Tenant agrees at its sole cost and expense to make an application to the Court for the approval of this Lease within three (3) business days following the date on which Landlord counter-signs this Lease and returns the same to Tenant or Tenant's counsel (the "Delivery Date"). Tenant shall pursue the application for Court approval diligently, in good faith and at Tenant's sole cost and expense and shall furnish such additional information and documentation as may be requested or otherwise required therefore.  In the event the Court has not issued its approval of this Lease within thirty (30) days of the Delivery Date, the Landlord may terminate this Lease agreement at any time thereafter, and upon such election this Lease shall terminate and come to an end, except that Landlord may apply the funds received on execution of this Lease to the use and occupancy charges that are due for Tenant's occupancy of the Demised Premises from June 1 2022 through the last day of the month in which Landlord's cancelation notice was issued; and Tenant shall have no further right to use and occupy the Demised Premises and it shall vacate and surrender possession of the Demised Premises and yield the same to Landlord in the condition required under the Lease, including Section 6.01 above  (notwithstanding the Lease is not in effect and which shall be an independent obligation of the Tenant), failing which Landlord may exercise all rights at law or in equity to recover possession of the Demised Premises and the amounts due from Tenant.

In addition, in the event the Court authorizes this Lease, Tenant shall pay to Landlord as a material condition to its continued occupancy of the Demised Premises and to the continued validity of this Lease, the sum in U.S. dollars that is equal to the product of Five Hundred ($500.00) U.S. Dollars  multiplied by the number of calendar days that have elapsed from June 1, 2022 through and including the day immediately preceding the Effective Date/Commencement Date plus the amount that Tenant would have paid under Article 5 above for Taxes and water charges as if the Commencement Date were June 1, 2022 (if and to the

33

extent the Taxes and water charges for this period had not been paid by Tenant). The amounts due hereunder shall be paid to Landlord and deemed adequate protection payments due to Landlord from June 1, 2022 to the Effective Date of this Lease and paid- within ten (10) days of Landlord's demand therefore and such amounts due shall be deemed Additional Rent.

SIGNATURES APPEAR ON NEXT PAGE

34

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals to this Lease the day and year first above written.

LANDLORD:

216 LENOX AVENUE FS INC.

By: _____
Name: FRANK J. CHIARELLO
Title: President

TENANT:

OWENS FUNERAL HOME, INC.

By: _____
Name: Isaiah Owens
Title: President
EIN#: 134049612

35

EXHIBIT  A

RENT SCHEDULE*

| Lease Year | Annual Rent | Monthly Rent |
|---|---|---|
| Lease Year 1 (6/1/2022 - 5/31/2023) | $180,000.00 | $15,000.00 |
| Lease Year 2 (6/1/2023 - 5/31/2024) | $185,400.00 | $15,450.00 |
| Lease Year 3 (6/1/2024 - 5/31/2025) | $190,962.00 | $15,913.50 |
| Lease Year 4 (6/1/2025 - 5/31/2026) | $196,690.86 | $16,390.91 |

*Excludes all forms of Additional Rents which are due pursuant to the terms of the Lease.

# EXHIBIT B

GUARANTY

Reference is made to a lease dated _September 2_, 2022 ("Lease"), by and between 216 LENOX AVENUE FS INC., a New York Corporation, having a mailing address of 875 Mamaroneck Avenue, Suite 306, Mamaroneck, NY 10543 ("Landlord"); and OWENS FUNERAL HOME, INC. a New York Corporation an address at 216 Lenox Avenue, New York, NY 10027 ("Tenant"), demising basement, seller and first floor chapel space ("Demised Premises") within the building located at 216 Lenox Avenue, New York, New York 10027 ("Building") as more particularly described in the Lease (Capitalized terms used herein and not defined herein shall have the meaning ascribed to such term in the Lease);

In consideration of the Landlord's execution of the Lease, the undersigned acknowledges that he/she/it/they is/are a principal(s) of Tenant, and that by reason of the Landlord's agreement to enter into the Lease, the undersigned will achieve a benefit, and therefore the undersigned jointly and severally, if more than one (hereinafter collectively or individually referred to as "Guarantor") intending to be legally bound, hereby becomes Guarantor for the prompt and faithful performance by Tenant, its successors and assigns, of the Lease and all of the terms, covenants and conditions thereof, and hereby agrees that as Guarantor, jointly and severally (if more than one Guarantor), to be liable to Landlord and its successors and/or assigns as follows: (i) for the payments of any and all amounts due from Tenant for the Annual Rent, Additional Rent and all other sums that shall become due under the Lease; and (ii) for the compliance, performance and observance of all representations, warranties and covenants made by Tenant in the Lease to be observed, kept and performed by Tenant (or anyone claiming under or through Tenant) and the damages, costs and expenses sustained by Landlord by reason of Tenant's non-compliance, performance and/or observance; and (iii) for (a) the Tenant's completion of any Alteration, Tenant's Work or other work performed in or to the Demised Premises by or on behalf of Tenant and the payment of all costs/fees associated therewith such that the Building in which the Demised Premises is situated and/or the Landlord is/are free of claims, charges and/or liens arising therefrom and (b) for any damages Landlord sustains by reason of the failure to so complete any such work and the claims arising therefrom; (iv) for damages, losses, costs and other expenses that Landlord incurs by reason Tenant's failure to surrender possession of the Demised Premises in the condition required under Section 6.01 of the Lease or otherwise, upon the Expiration Date or sooner termination of the Term of the Lease (or if the Effective Date of the Lease does not get triggered) and (v) as to the expenses and costs incurred by Landlord in enforcing this Guaranty and/or the Lease, including reasonable legal fees (hereafter (i), (ii), (iii) and (iv) above are referred to herein as "Obligations").

Guarantor agrees that (i) these Obligations shall be binding upon Guarantor without any further notice or acceptance hereof, but the same shall be deemed to have been accepted by the execution of the Lease; (ii) immediately upon each and every default by Tenant without any notice to or demand upon Guarantor, Guarantor will pay to Landlord the sum or sums in default and will comply with or perform all the terms, covenants and conditions of the Lease which shall be binding

1

upon the said Tenant, its successors or assigns, as provided in the Lease;  (iii) no extension, forbearance, modification, assignment or amendments of the Lease (including an amendment to increase or decrease in the size of the Demised Premises and resultant increase or decrease in amount of the Annual Rent and Additional Rent obligations) shall relieve Guarantor of these Obligations; (iv) Landlord and Tenant, without notice to or consent by Guarantor, may at any time or times enter into any modifications, extension, amendments (including an amendment to increase or decrease in the size of the Demised Premises and resultant increase or decrease in amount of the Annual Rent and Additional Rent obligations) or other covenants or indulgences respecting the Lease and that any joinder, waiver, consent or agreement by Tenant by its own operation shall be deemed to be a joinder, consent, waiver or agreement by Guarantor with respect thereto and that Guarantor shall continue as Guarantor with respect to the Lease as so modified, extended, amended or otherwise affected; and (v) any assignment of the Lease or sublease of the Demised Premises shall not affect the validity or enforceability of the Guaranty and Guarantor's Guaranty of the Obligations shall remain in full force and effect jointly with the assignee or sublessee and (vi) any release or disbursement of the Tenant's Security Deposit shall have no effect on the Guarantor's Guaranty of the Obligations.

Guarantor further agrees, to be bound by each and every covenant, obligation, power and authorization, without limitation, in the Lease, with the same force and effect as if it were designated in and had executed the Lease as Tenant thereunder, it being specifically understood and agreed by Guarantor that its liability hereunder shall be primary, and that in any right of action which may accrue to the Landlord under the Lease, the Landlord may, at Landlord's option, proceed against the undersigned with or without having commenced any action against or having obtained any judgment against the Tenant or any assignee of Tenant.

Guarantor acknowledges and agrees that the Tenant's Security Deposit shall not be used to satisfy Guarantor's Obligations hereunder (and which Security Deposit shall be deemed forfeited by Tenant and Guarantor by reason of Tenant's failure to occupy the Demised Premises through the stated Expiration Date of the Lease default free).

Guarantor further agrees that Guarantor will, upon request from Landlord and promptly following such request (which shall not be more frequently than once per year), furnish Guarantor's current financial statements in a form reasonably acceptable to Landlord and further provide Guarantor's tax returns.

This Guaranty shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law. Guarantor hereby irrevocably (a) submits in any legal suit, action or proceeding relating directly or indirectly to the Lease or this Guaranty to the non-exclusive *in personam* jurisdiction of any state or United States court of competent jurisdiction sitting in the State of New York with venue in New York County and agrees to suit being brought in such courts, as Landlord may elect; (b) waives any objection it may now or hereafter have to the venue of such proceeding in any such court or that such

2

proceeding was brought in an inconvenient court; (c) agrees to service of process in any legal proceeding by mailing of copies thereof (by registered or certified mail, or by overnight courier, if practicable) postage prepaid  to its address set forth herein or such other last known address of which Landlord shall have been notified in writing; and (d) agrees that nothing herein shall affect Landlord's right to effect service of process in any other manner permitted by law, and that Landlord shall have the right to bring any legal proceedings (including, without limitation, a proceeding for enforcement of a judgment entered by any of the aforementioned courts) against Guarantor in any other court or jurisdiction in accordance with applicable law. **Notwithstanding anything contained herein to the contrary, Guarantor for itself and all who may claim under him (other than Guarantor), after consulting or having had the opportunity to consult with counsel, knowingly, voluntarily and intentionally waives (i) any right he/it may have to a trial by jury in any action, proceeding, claim or counterclaim based hereon or otherwise in respect hereof or brought with respect to any course of conduct, dealing or statements (whether oral or written), and (ii) any right in any such action, proceeding, claim or counterclaim to interpose counterclaims or setoffs of any kind or description.** Guarantor shall not seek to consolidate, by counterclaim or otherwise, any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived. These provisions shall not be deemed to have been modified in any respect or relinquished by Landlord except by a written instrument executed by Landlord.

Nothing herein shall limit the ability of the Landlord to collect any monies due from the Tenant under the Lease, including Landlord's right to retain the Tenant's Security Deposit in the event of a default.

IN WITNESS WHEREOF, the undersigned hereunto sets his/her hand to this Guaranty the _2nd_ day of _September,_ 2022.

Guarantor:

_(signature)_

Print Name:  ISAIAH OWENS

Sworn to before me this

_2nd_ day of _September_ .

_(signature)_

Notary Public

Residence Address:

_216 Lenox Avenue, NY, NY 10027_

Angela M Williams
Notary Public, State of New York
NO. 01WI4917470
Qualified in Nassau County
My Commission Expires January 19th, 2026

3